GALT BOOTH ET AL. *v.* ROBERT C. FLANAGAN ET AL. (8703)

DUPONT, C. J., SPALLONE and O'CONNELL, Js.

Argued October 1—decision released December 11, 1990

*Bruce L. Elstein,* for the appellants (plaintiffs).

*Roger J. Frechette,* with whom was *Matthew E. Frechette,* for the appellee (named defendant).

*Roger Sullivan,* for the appellees (defendant Stephen Yardan et al.).

O'CONNELL, J. The plaintiffs appeal from a summary judgment rendered for the defendants in an action arising out of a contract for the sale of real estate. The case was previously before this court in *Booth* v. *Flanagan,* 19 Conn. App. 413, 562 A.2d 592 (1989). In that decision, we set aside a summary judgment that the trial court had rendered sua sponte without either a motion or any supporting documents having been filed by the parties. See Practice Book § 384. While on remand to the trial court for further proceedings, the defendants filed a summary judgment motion supported by affidavits and other documentary proof. Sum-

mary judgment was again granted in favor of the defendants. We affirm the judgment of the trial court.

The pleadings and affidavits available for the trial court's consideration disclose the following facts. On April 20, 1984, the decedent, Carol A. Schroff, died owning property in which the plaintiffs were tenants. The East Haven Probate Court, assuming that Schroff died intestate, appointed the defendant Robert Flanagan administrator of her estate on May 21, 1984. On June 7, 1984, Flanagan contracted in writing to sell the property to the plaintiffs. The contract was contingent, among other things, on the plaintiffs' ability to obtain a mortgage commitment on or before August 1, 1984.

In July, 1984, the decedent's will was found and admitted to probate. On September 17, 1984, the Probate Court revoked Flanagan's appointment as administrator by approving the defendant Stephen Yardan, who was named in the will, as executor.[1] On October 4, 1984, Flanagan returned the plaintiffs' initial deposit and informed them that he had been removed as the fiduciary and no longer had authority to sell the property. Yardan resigned on August 27, 1985, and the defendant Gary Flesche, who was named in the will as both successor executor and residuary legatee, was approved as successor executor. The property in question would pass to Flesche as residuary legatee.

The dispositive issue on appeal is whether there was an enforceable contract for the sale of real estate. We look to the statute of frauds to make this determination. General Statutes § 52-550 (a) (4) provides that no civil action shall be brought on any agreement for the sale of real estate unless that agreement or a memo-

---

[1] Although the Probate Court did not formally revoke Flanagan's administration, the probate decree admitting the will to probate implicitly revoked and effectively terminated Flanagan's intestate administration. *Gaucher* v. *Estate of Camp*, 167 Conn. 396, 400, 355 A.2d 303 (1974).

randum thereof is in writing and signed by the party to be charged. A written agreement or memorandum thereof is an ancient requirement; *Tainter* v. *Brockway*, 1 Root 59 (1773); and whether the writing is sufficient to satisfy the statute has been the subject of infinite litigation.

To determine whether the statute of frauds is satisfied in the present case, we focus on the mortgage contigency clause. The degree of detail required when an agreement is conditioned on the purchaser's obtaining a mortgage was a source of confusion among drafters of real estate sales documents. See *Montanaro* v. *Pandolfini,* 148 Conn. 153, 157, 168 A.2d 550 (1961). This uncertainty was removed in 1976 by the enactment of Public Acts 1976, No. 76–69, now General Statutes § 49-5b, which provides that a mortgage contigency clause is sufficient to satisfy the statute of frauds if it contains at least the following information: (1) the principal amount of the loan required to fulfill the contigency; (2) the time period within which the mortgage commitment must be obtained; and (3) the term of the mortgage expressed in years.[2]

In the present case, the mortgage contingency clause did not state the principal dollar amount of the loan or the term of the mortgage expressed in years that the plaintiffs had to obtain to fulfill the contingency. Accordingly, it is defective because it omits two of the three statutory requirements.

---

[2] General Statutes § 49-5b provides: "Any mortgage contingency clause included in a bond for deed or a written agreement for sale of real estate which conditions the purchaser's performance on his obtaining a mortgage from a third party shall satisfy the provisions of section 52-550 if such mortgage contingency clause contains at least the following: (1) The principal amount in dollars of the loan the purchaser must obtain to fulfill such contingency; (2) the limit of the time period within which a commitment for such loan must be obtained, and (3) the term of the mortgage expressed in years."

The plaintiffs argue that a mortgage contingency clause is a condition precedent to a contract, not a term thereof, and therefore the statute of frauds is not applicable to it. Whatever merit this argument may have had prior to 1976 was nullified by passage of General Statutes § 49-5b. The legislative history of § 49-5b discloses that it was enacted expressly in response to a decision of the Appellate Division of the Court of Common Pleas holding that the mortgage contigency clause in the case before it was not sufficient to satisfy the statute of frauds.[3] Furthermore, our Supreme Court has interpreted § 49-5b as "set[ting] forth minimum standards for satisfaction of the requirements of the statutes of frauds."[4] See *Dart & Bogue* v. *Slosberg,* 202 Conn. 566, 573, 522 A.2d 763 (1987); *Maturo* v. *Scranton,* 177 Conn. 569, 571 n.1, 418 A.2d 928 (1979).

In addition, the plaintiffs erroneously rely on *Faloutico* v. *Maher,* 182 Conn. 448, 438 A.2d 710 (1980). That case is inapposite because, as the Supreme Court noted in that decision, it was decided in reference to a contract that was executed prior to the effective date of § 49-5b. Id., 448 n.1.

The plaintiffs also argue that the legislature erroneously thought that the statute of frauds applied to conditions precedent and therefore mistakenly enacted § 49-5b. We may not elect to disregard a statute on the ground that if the legislature had a better understanding of the law, the statute would not have been passed. The legislature is presumed to know the existing state

[3] The case, *Schubert* v. *Gawe,* Court of Common Pleas, Appellate Division, Docket No. CV 13-7201-7355 (January 20, 1975), cert. denied, 168 Conn. 652 (1975), is not officially reported.

[4] The urgency that the legislature attached to Public Acts 1976, No. 76-69, now General Statutes § 49-5b, is demonstrated by the fact that although it passed the House of Representatives on March 23, 1976, it took effect on April 21, 1976, rather than the usual date of October 1, 1976. See General Statutes § 2-3.

of law when it enacts a statute. *Glastonbury Co.* v. *Gillies,* 209 Conn. 175, 181–82, 550 A.2d 8 (1988). Therefore, we apply a statute as its language directs. *Breen* v. *Department of Liquor Control,* 2 Conn. App. 628, 631, 481 A.2d 755 (1984).

The plaintiffs also contend that § 49-5b was enacted to protect buyers, not sellers, and thus they may waive its protection. The fallacy of this argument is that it does not recognize that the purpose of § 49-5b is to define, in part, the sufficiency of a memorandum that will satisfy the statute of frauds. The statute of frauds bars actions where there is not a sufficient memorandum in writing signed by the party to be charged. "In an action to enforce a contract for the sale of real property, the party to be charged, within the meaning of the statute, is the party against whom the contract is to be enforced." *Kasper* v. *Anderson,* 5 Conn. App. 358, 362, 498 A.2d 132, cert. denied, 197 Conn. 818, 501 A.2d 388 (1985); 72 Am. Jur. 2d, Statute of Frauds § 364; 1 Restatement (Second), Contracts § 135, comment a. The defendants are the parties to be charged, and only they could waive the statute, not the plaintiffs.

The trial court properly granted summary judgment based on its conclusion that the contract for the sale of real property was unenforceable because it failed to meet the minimum requirements of the statute of frauds.

Summary judgment "shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384. "Material fact" has frequently been defined as a fact that will make a difference in the result of the case. *Hammer* v. *Lumberman's Mutual Casualty Co.,* 214 Conn. 573, 578, 573 A.2d 699 (1990); *United Oil Co.* v. *Urban*

*Redevelopment Commission,* 158 Conn. 364, 379, 260 A.2d 596 (1969). The test for whether there is a material fact is whether a party would be entitled to a directed verdict on the same facts. *State* v. *Goggin,* 208 Conn. 606, 616, 546 A.2d 250 (1988). In this case, where the plaintiffs have failed to show that there is a contract for the sale of real estate that satisfies the statute of frauds, the defendants would be entitled to a directed verdict. The plaintiffs' case is predicated entirely on a contract to sell real estate, which is unenforceable under the statutes of frauds. Whether there exist genuine issues of material fact involving any of the other special defenses[5] is irrelevant because, regardless of their resolution, the contract is unenforceable and the defendants remain entitled to summary judgment in their favor.

Accordingly, we do not reach the plaintiffs other claims.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] The other special defenses were (1) that the plaintiffs' specific performance claim was time barred by General Statutes § 47-33a, (2) that the contract was a nonbinding obligation, the performance of which became impractical in any event upon the admission of the will, and (3) that the plaintiffs themselves breached the agreement by their failure to perform in the manner required by it.