# BETHLEHEM CHRISTIAN FELLOWSHIP, INC. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF MORRIS
## (AC 19227)

Lavery, Hennessy and Daly, Js.[1]

Argued February 18—officially released June 27, 2000

*Kenneth R. Slater, Jr.*, for the appellant (plaintiff).

*Andrew W. Roraback*, for the appellee (defendant).

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

HENNESSY, J. The plaintiff, Bethlehem Christian Fellowship, Inc., appeals from the judgment of the trial court affirming the denial by the defendant, the planning and zoning commission of the town of Morris (commission), of the plaintiff's application for a special exception to build a church meetinghouse. On appeal, the plaintiff claims that the court improperly found that the plaintiff lacked standing as an aggrieved party to appeal from the denial of its zoning application. We agree and reverse the judgment of the trial court.

The following facts were before the court. On May 22, 1996, the plaintiff entered into a contract with Catherine Mosimann and the estate of her late husband, Walter Mosimann, to purchase real property in Morris. Under the agreement, zoning approval for a special exception to build the meetinghouse was made a condition of the sale. Under the agreement, zoning approval was to be obtained by July 19, 1996, and a closing was to take place by August 1, 1996. Zoning approval was not obtained by July 19, 1996, and the parties entered into two modifications of the contract. The first modification, dated January, 1997, was five months after the closing date called for in the agreement. It extended the date for obtaining zoning approval to March 31, 1997, and the closing date to April 18, 1997. The plaintiff filed with the commission an application seeking zoning approval. After public hearings through the summer of 1997, the commission on October 1, 1997, denied the application without prejudice because the tape recordings of the hearings were defective. The application was resubmitted, and a second series of public hearings was held. The commission denied the application for a special exception on November 5, 1997. An appeal was filed by the plaintiff on December 2, 1997. Soon after the appeal was filed, the contract was modified a second time on December 24, 1997, which

extended the date for zoning approval to November 30, 1998, with the closing to take place within thirty days of zoning approval.

The court dismissed the plaintiff's appeal for lack of subject matter jurisdiction. The court held that the plaintiff was not an aggrieved party and lacked standing because at the time the appeal was filed, the plaintiff did not have a contract to purchase the property and, therefore, did not have a legal interest in the outcome of the case.

The plaintiff claims that the court improperly ruled that the plaintiff lacked standing as an aggrieved party to appeal from the denial of its zoning application. " 'The question of aggrievement is essentially one of standing.' *Beckish* v. *Manafort,* 175 Conn. 415, 419, 399 A.2d 1274 (1978). The issue of standing invokes the trial court's subject matter jurisdiction. *D.S. Associates* v. *Planning & Zoning Commission,* 27 Conn. App. 508, 511, 607 A.2d 455 (1992). The issue cannot be waived. 'Proof of aggrievement is essential to a trial court's jurisdiction of a zoning appeal.' " *R & R Pool & Home, Inc.* v. *Zoning Board of Appeals,* 43 Conn. App. 563, 568, 684 A.2d 1207 (1996). "Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) *DiBonaventura* v. *Zoning Board of Appeals,* 24 Conn. App. 369, 373–74, 588 A.2d 244, cert. denied, 219 Conn. 903, 593 A.2d 129 (1991).

"[T]he fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement

must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision . . . . *Cannavo Enterprises, Inc.* v. *Burns,* 194 Conn. 43, 47, 478 A.2d 601 (1984); *Bakelaar* v. *West Haven,* [193 Conn. 59, 65, 475 A.2d 283 (1984)]. Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. *O'Leary* v. *McGuinness,* 140 Conn. 80, 83, 98 A.2d 660 (1953). *Hall* v. *Planning Commission,* 181 Conn. 442, 445, 435 A.2d 975 (1980). . . . [*Connecticut State Medical Society* v. *Board of Examiners in Podiatry,* 203 Conn. 295, 299–300, 524 A.2d 636 (1987)]." *Northeast Parking, Inc.* v. *Planning & Zoning Commission,* 47 Conn. App. 284, 288, 703 A.2d 797 (1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998). "[I]n order to retain standing as an aggrieved person, a party must have and must maintain a specific, personal and legal interest in the subject matter of the appeal throughout the course of the appeal. . . . It is not enough for a party to have an interest in the property sufficient to establish aggrievement only at the time of the application to the commission." (Citations omitted.) *Primerica* v. *Planning & Zoning Commission,* 211 Conn. 85, 94, 558 A.2d 646 (1989).

"The determination of aggrievement presents a question of fact for the trial court and a plaintiff has the burden of proving that fact. *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 493, 400 A.2d 726 (1978). . . . *United Cable Television Services Corp.* v. *Dept. of Public Utility Control,* 235 Conn. 334, [343], 663 A.2d 1011 (1995)." (Internal quotation marks omitted.)

*Northeast Parking, Inc.* v. *Planning & Zoning Commission,* supra, 47 Conn. App. 288. "Our review is to determine whether the judgment of the trial court was clearly erroneous or contrary to the law." *Fuller* v. *Planning & Zoning Commission,* 21 Conn. App. 340, 344, 573 A.2d 1222 (1990).

The plaintiff argues that it is a party to a purchase and sale agreement concerning the property, which agreement was in effect at the time the plaintiff filed its appeal. In dismissing the appeal, the court reasoned that by entering into an extension in December, 1997, the parties implicitly acknowledged that the contract had expired prior to that date. The court held that the delay of seven months after the expiration of the terms of the first modification was not reasonable and, thus, the plaintiff did not have a contract to purchase the property in question because the contract had expired. In reaching this conclusion, the court relied on *Pollio* v. *Conservation Commission,* 32 Conn. App. 109, 628 A.2d 20 (1993), and *Goldfeld* v. *Planning & Zoning Commission,* 3 Conn. App. 172, 486 A.2d 646 (1985).

In *Pollio* and *Goldfeld,* the plaintiffs failed to sustain their burden of proving aggrievement throughout the course of their appeals because their option contracts had lapsed during the pendency of the appeals. Once the time limitation passes in an option contract, the authority to accept the offer and to establish a binding purchase and sale agreement no longer exists. Thus, upon expiration of an option contract, the offeree no longer possesses any legal right to accept the offer to purchase the land and therefore has no interest in the property. This case, however, does not deal with an option contract, but with a contract to purchase land. Unlike in option agreements,[2] a buyer and seller in a

---

[2] "An option contract and a contract of sale are in fact two separate and distinct contracts, namely, an option contract, and an agreement to sell. An option, originally, is neither a sale nor an agreement to sell. It is not a

contract to purchase land undertake mutual promises for the purchase and sale of the property. Those obligations are not necessarily extinguished after the specified closing date passes. "The law is that a day fixed in a contract for closing title, without more, is merely formal; but if it is stipulated that time is of the essence, or the circumstances are persuasive that that is the case, prompt performance is essential, and it is also the law that where the time fixed is regarded as a formality only, and the period has gone by, or where time is of the essence and there is a waiver, that time may nevertheless be made of the essence by formal demand that the title be closed by a given day; but the time given must be reasonable. . . . Of course, [t]he fact that a contract sets a date for the closing of a transaction does not of itself make time of the essence of the contract. . . . *Calandro* v. *Koons*, 17 Conn. Sup. 374, 380 (1951)." (Citations omitted; internal quotation marks omitted.) *Fullerton* v. *McGowan*, 6 Conn. App. 624, 629, 507 A.2d 473 (1986).

The court stated that while "time is not of the essence ordinarily in real estate purchase contracts, '[w]here a time for performance is stated in an agreement, a party's tender of performance within a reasonable time thereafter will be considered substantial performance. . . .' *Mihalyk* v. *Mihalyk*, 11 Conn. App. 610, 616, 529 A.2d 213 (1987)." In concluding that the delay after the first modification was unreasonable, the court stated that the plaintiff chose to pursue the matter with the commission instead of entering into another modification in the seven month period after the last modification

contract by which one agrees to sell and the other to buy, but it is only an offer by one to sell within a limited time and a right acquired by the other to accept or reject such offer within such time." (Internal quotation marks omitted.) *Cutter Development Corp.* v. *Peluso*, 212 Conn. 107, 110, 561 A.2d 926 (1989).

approval date had expired. In light of the fact that "[s]tanding is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights"; (internal quotation marks omitted) *DiBonaventura* v. *Zoning Board of Appeals*, supra, 24 Conn. App. 373; we conclude that the contract remained in effect. Time was not of the essence in the sales contract, and the seller did not formally demand that the plaintiff adhere to the closing date. The parties to the contract treated the contract as being in effect throughout the proceedings, and the wording of the contract did not convey a difference intent. Accordingly, we conclude that the court's decision that the plaintiff is not aggrieved is an overly technical application of the test for aggrievement.[3]

The judgment is reversed and the case is remanded for a hearing on the merits of the plaintiff's appeal.

In this opinion the other judges concurred.

---

[3] The commission also argues that the court could have dismissed the plaintiff's appeal because the modifications to the contract did not identify the parties with reasonable certainty and, thus, failed to satisfy the statute of frauds. Although the court declined to review this issue and instead chose to base its decision on the other arguments raised by the commission, the commission on appeal argues that where a trial court renders judgment on mistaken grounds, appellate courts repeatedly have affirmed the trial court's action if proper grounds exist to support it. See, e.g., *Herrmann* v. *Summer Plaza Corp.*, 201 Conn. 263, 274, 513 A.2d 1211 (1986).

We decline to affirm the judgment on the basis of the commission's statute of frauds argument. The statute of frauds is a defense that can be waived by the party entitled to its benefit. *Wolfe* v. *Wallingford Bank & Trust Co.*, 124 Conn. 507, 512–13, 1 A.2d 146 (1938); *Booth* v. *Flanagan*, 23 Conn. App. 579, 584, 583 A.2d 148 (1990), appeal dismissed, 220 Conn. 453, 599 A.2d 380 (1991). Thus, a claim by the commission that the contract violates the statute of frauds does not necessarily make the contract unenforceable.