[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On April 13, 2000, the Connecticut Supreme Court remanded this matter to this court to conduct an evidentiary hearing and to make factual and legal findings on the issue of aggrievement. On July 11, 2000, the court held that hearing.
A review of the procedural history is appropriate. On September 10, 1997, the plaintiffs, Timothy Taft, Robert G. Viens, Robert J. Viens, and Marguerite G. Viens, commenced this action against the defendants, Wheelabrator Putnam, Inc., (Wheelabrator), and the Putnam Zoning Commission (commission). The action seeks a declaratory judgment, injunctive relief, and damages. The essence of the suit is a collateral attack upon the issuance of a special permit by the commission enabling Whelabrator to construct and operate an ash residue landfill on property partly owned by and partly leased to Wheelabrator and located in Putnam.
The plaintiffs contend that the permit was invalid because of certain procedural irregularities concerning notice of the decision of the commission. The plaintiffs never directly appealed to the Superior Court from the commission's decision. On October 30, 1997, Wheelabrator moved to dismiss this action arguing that Special Act 97-6 validated any defects as to the notification procedure employed by the commission. The commission joined in this motion on November 26, 1997.
On January 20, 1998, this court granted these motions to dismiss holding that the validating act cleansed any procedural defects as to notice and that the failure by the plaintiffs to utilize an administrative appeal to the Superior Court under General Statutes §8-8 (b) deprived this court of subject matter jurisdiction to consider the collateral attack, Taft v. Wheelabrator Putnam, Inc., Superior Court, Windham J.D., d.n. CV97-0066880 (January 20, 1998) CT Page 10092
The plaintiffs appealed from this dismissal, and, on October 19, 1999, the Appellate Court reversed that decision ruling that the validating act failed to cure the type of defective notice present in this case, Taftv. Wheelabrator Putnam, Inc., 55 Conn. App. 359 (1999). The defendants sought and received certification to appeal the Appellate Court decision to our Supreme Court, Taft v. Wheelabrator Putnam, Inc., 252 Conn. 918
(2000) and 252 Conn. 919 (2000)
On February 22, 2000, Wheelabrator filed with the Supreme Court a motion to dismiss the plaintiffs' appeal to the Appellate Court and to vacate the decision of the Appellate Court claiming that the plaintiffs lacked aggrievement when the Appellate Court rendered its decision. On April 13, 2000, the Supreme Court remanded the matter to this court to resolve the factual and legal issues regarding aggrievement. As to this issue, the court makes "the following determinations.
Paragraph 8 of the complaint sets forth the plaintiffs' claim of aggrievement. It states that the plaintiffs will be "directly and peculiarly affected by the construction and operation of an ash landfill" because their properties lie in "close proximity" to the site and abut truck access routes to the site and the granting of the special use permit "would adversely affect the value of their properties, their specific interests and the use and enjoyment of their properties." At the evidentiary hearing, the plaintiffs agreed that the issue of the construction of the landfill was moot because such construction was completed by May 1999. Consequently, the focus of the aggrievement claims is as to the operation phase only.
With regard to that issue, the court finds that none of the plaintiffs own property which abuts the landfill nor are their parcels within one mile of its borders. Taft's land is located at 50 Mantup Road and the Viens' properties are located at 111 to 113 Mantup Road in Putnam.
Robert G. Viens also argues that his sole ownership of a corporation, Putnam River Road, LLC, entitles him to have the court treat his aggrievement claim as if he held title to property located at 341 River Road, Putnam, in his own name. That parcel abuts the landfill site. The court rejects this argument. The evidence disclosed that 341 River Road is presently owned by Putnam Road, LLC, which entity acquired that property, on March 21, 2000, from another corporation, Mantup Prop. Mgt. Inc. (Mantup), a date after the Appellate Court decision of October 19, 1999. No evidence was adduced as to when Mantup acquired the property nor as to its shareholders. The purchase at a later time by a corporation solely owned by Robert G. Viens is immaterial as to whether he was aggrieved earlier. CT Page 10093
Initially, the usual access to the landfill by the trucks carrying residue would have been over Mantup Road, and traveling past the plaintiffs' properties. However, the plaintiffs and Wheelabrator entered into an agreement whereby Wheelabrator constructed a separate, private access road to the landfill and bound itself to use that access exclusively, except for certain emergencies. The plaintiffs agreed to refrain from appealing from administrative decisions of the Connecticut department of environmental protection and the municipal wetlands and subdivision authorities which had previously granted permission for the construction and operation of the landfill. This private access road eliminates the use by residue truck traffic along Mantup Road.
On March 19, 1998, the D.E.P. issued a permit to construct the ash residue landfill, and, on May 6, 1999, the D.E.P. authorized its operation. On June 1, 1999, the construction permit was amended to require Wheelabrator to use the private road as access to the landfill fulfilling the terms of the parties' agreement.
After the reversal of this court's decision by the Appellate Court, Wheelabrator applied for and was granted, on December 14, 1999, a second special use permit by the commission to operate the landfill. The plaintiffs never appealed from the issuance of that second permit. The landfill has operated since May 12, 1999, and the only truck access in use is by way of the specially constructed bridge and road. Wheelabrator has gated all other routes to the site.
The plaintiffs presented no witnesses at the aggrievement hearing relying instead on documentary evidence. No evidence was offered that the operation of this ash residue landfill would likely be perceptible to the senses from the plaintiffs' properties. The plaintiffs submitted no evidence as to any "negative financial impact of the landfill operation on the value of their respective properties. The plaintiffs conceded at the searing that the risk of reduction in property value was not a valid source of aggrievement in this case.
The ash landfill in question receives the ash residue from various trash-to-energy plants in the region. The trash is incinerated at these plants, and the heat produced is used to enerate electric power. The trash is burned in giant boilers attaining a temperature of 23000 F. The byproduct is ash and some chunks of metal. All collection, retention, and incineration occurs at the plants and not at the landfill. The residue is then Loaded onto trucks, dampened with water to minimize dust dispersal, and transported to the landfill. The residue is deposited in an excavated area which is lined by two layers of one-sixteenth inch polyethylene material originally designed to contain hazardous materials. The CT Page 10094 deposited residue is then covered with gravel. The trucks then pass through a washing station to remove any dust.
The ash landfill receives no garbage, trash, or other materials which might undergo putrefaction. No offensive odors are produced nor are vermin attracted to the site. The double liners have a leachate collection mechanism which pumps any leachate from the container to a pretreatment plant and eventually to a municipal water treatment facility. The hydrogeologic characteristics of the area surrounding the facility are such that the surface and ground waters on the property flow easterly toward the Quinebaug River. The plaintiffs' parcels are situated on the opposite side of the landfill, over one mile away to the northwest.
All the plaintiffs claim classical aggrievement, and Robert G. Viens additionally claims statutory aggrievement under § 8-8 (a)(1). The court holds that statutory aggrievement is inapplicable both legally and factually. Factually, as noted above, the court has determined that there is no evidence that Robert G. Viens owned property abutting or within 100 feet of the landfill property before Putnam River Road, LLC, acquired 341 River Road on March 21, 2000. Legally, this action is seeking a declaratory judgment and injunctive relief and is not an administrative appeal from the granting of the special use permit. Therefore, § 8-8
has no bearing in this case. Also, this plaintiff expressly pleaded classical aggrievement and not statutory aggrievement in paragraph 8 of the complaint as discussed earlier.
Robert G. Viens contends that the cases of L.G. Associates v. ZoningBoard of Appeals, 31 Conn. App. 12 (1993) and Pierce v. Harwinton ZoningBoard of Appeals, 7 Conn. App. 632 (1986) stand for the proposition that § 8-8 (a)(1) governs not only administrative appeals in zoning matters, but also collateral attacks on such zoning decisions. These two cases do not support that proposition. Those decisions used § 8-8 (a) (1) in declaratory judgment cases to ascertain who must be made adefendant in such actions because any decision might affect their interests. The cases did not employ § 8-8 (a)(1) to determine who may be an aggrieved plaintiff with standing to bring such an action.
Turning to the questions of classical aggrievement, the court observes that a party seeking declaratory and injunctive relief must establish standing to maintain such an action "by showing that the party claiming it is . . . classically aggrieved," Carl J. Herzog Foundation, Inc. v.University of Bridgeport, 243 Conn. 1, 5 (1997). The fundamental test for assessing classical aggrievement encompasses a "two-fold determination,"Bethlehem Christian Fellowship v. Planning and Zoning commission,58 Conn. App. 441, 443 (2000) CT Page 10095
First, the plaintiff must successfully demonstrate a specific personal and legal interest in the matter as distinguished from a general interest shared by the members of the community at large, Id., 444. Second, the plaintiff must demonstrate that that specific personal and legal interest was specially injured or impaired, Id. The plaintiff need not prove to a certainty that such injury has occurred, but merely that the possibility exists for such adverse impact, Id.
Also, a plaintiff must retain standing throughout the proceeding, i.e. the party must continue to possess that special and personal legal interest, Id. It is insufficient to establish aggrievement only at the time the action was filed, Id. In the present case, the court finds that the plaintiffs lost any special and personal legal interest in the operation of the ash landfill when Wheelabrator constructed a bridge and private access road to its facility in May 1999. The ash-carrying trucks do not pass by or near the plaintiffs' parcels. The nearest part of the facility property is over a mile away from the nearest of these parcels. As described above the distance, construction, nature of the operation, the terrain, and the hydrogeologic circumstances surrounding the facility are such that there is no physically discernable negative impact possibly affecting the plaintiffs' interest. There are no odors, vermin, discharges, noise, dust, or traffic emanating from the landfill so as to reach the plaintiffs' properties. Thus, the plaintiffs no longer possess any special, personal and legal interest in the operation of this ash landfill.
Consequently, the court finds that the plaintiffs have failed establish that, as of May 1999, they were classically aggrieved by the operation of an ash residue landfill at the Wheelabrator site.
Sferrazza. J.