[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTIONS TO DISMISS
This is an administrative appeal by the plaintiff, University of Connecticut ("University"), of a final decision issued on August 16, 1999, by the defendant, Department of Public Utility Control ("the DPUC"), authorizing Charter Communications of Northeast Connecticut ("Charter", ) pursuant to a certificate of public convenience and necessity, to provide cable services at the University's campus located in Storrs, Connecticut. The plaintiff's appeal is authorized pursuant to General Statutes §§ 4-176 and 4-183. Presently before the court is a motion to dismiss filed on October 12, 1999 by Charter. an intervener in the present appeal, on the ground that the court lacks subject matter jurisdiction. For the reasons set forth below, the motion to dismiss is denied.
The following facts are gathered from the administrative record and the evidence proffered at the August 9, 2000 hearing on the motion to dismiss. Having recently completed a conduit for the installation of cable wiring through the Storrs campus, the University was interested in having Charter provide cable services to its campus. On August 18, 1989, the University and Charter[1] executed a contract, whereby Charter agreed to provide a complete cable system to the University. The agreement was for a ten year period, requiring five percent of Charter's revenue to pass to the University. The contract provided that all cable used was the property of Charter. There is no provision in the contract as to the parties' rights upon completion of the contract. The parties to the contract did not seek approval from the DPUC.
The contract was carried out over the ten-year period with Charter using the University's conduit to bring its cable wires both outside and inside campus buildings. Currently, according to Robert Vietzke, manager of video communications for the University, Charter's cable wires occupy one-third to one-half of space in the conduit. At many locations on campus, the conduit is completely full.[2]
During the ten-year contract period, Charter requested and received a franchise from the DPUC to provide cable services for sixteen towns in Northeastern Connecticut, including Mansfield and its subdivision, Storrs.[3] On July 19, 1998, the DPUC held a renewal hearing for the franchise and again awarded it to Charter for a period of thirteen years.
Since 1994, the University and Charter have engaged in negotiations CT Page 11196 regarding fees and other services supplied by Charter under the 1989 contract. When negotiations failed, the University terminated the agreement on August 19, 1999.
Pursuant to a comprehensive plan established by the legislature known as "UConn 2000", the University is currently exploring ways to expand educational opportunities for the people of Connecticut. See General Statutes § 10a-109a et seq. As part of the plan, the University is authorized to develop, implement and improve the telecommunications infrastructure at the Storrs campus. See General Statutes § 10a-109e. With the expenditure of $750,000, some of which was spent to "work around" Charter's existing cable wires, the University created its own cable system called HUSKYvision. The HUSKYvision channel line-up includes both entertainment and academic programing to residential students. Currently, both HUSKYvision and Charter's cable system are available to residential students at the Storrs campus.
On February 11, 1999, Charter filed a request for a declaratory ruling with the DPUC as to the rights and obligations to provide cable services to the University's Storrs campus and the right of the University to provide video service on the campus. A final decision on the petition was issued by the DPUC on August 16, 1999, just as the contract between the University and Charter expired. The DPUC concluded that it had jurisdiction over the University to regulate cable services and found that Charter continues to have a right of access to the University's dormitories and other buildings for the purpose of providing cable services. Presently, in light of the DPUC's decision, Charter's cable lines remain in place on the campus and its services remain available to the students and administrators.
The University has appealed from the final decision of DPUC on three grounds. First, it claims that DPUC does not have jurisdiction over the University to regulate cable services as set forth in General Statutes chapter 289; secondly, it challenges the interpretation given by DPUC of General Statutes § 16-333a that college dormitories are multiple dwellings; and third, it raises the rights given in General Statutes § 4b-11 to control its own facilities and properties. Charter has moved to dismiss the plaintiff's appeal on the grounds of lack of aggrievement under General Statutes § 4-183 (a).[4]
"It is well established that the right to appeal an administrative action is created only by statute and a party must exercise that right in accordance with the statute in order for the court to have jurisdiction. . . ." (Citations omitted.) New England Rehabilitation Hospital ofHartford, Inc. v. CHHC, 226 Conn. 105, 120 (1993). "A statutory right to appeal may be taken advantage of only by strict compliance with the CT Page 11197 statutory provisions by which it is created. . . . Such provisions are mandatory, and, if not compiled with, the appeal is subject to dismissal." (Citations omitted; internal quotation marks omitted.) Rainesv. Freedom of Information Commission, 221 Conn. 482, 489-90 (1992).
"Accordingly, in order to have standing to bring an administrative appeal, a person or entity must be aggrieved. . . . Aggrievement is a question of fact for the trial court and the plaintiff has the burden of proving that fact. . . . Pleading and proof of facts that constitute aggrievement are essential prerequisite to the trial court's subject matter jurisdiction over an administrative appeal. . . . In the absence of aggrievement, an administrative appeal must be dismissed for lack of subject matter jurisdiction . . . (Citations omitted; internal quotation marks omitted.) New England Rehabilitation Hospital of Hartford, Inc. v.CHHC, supra, 226 Conn. 120.
"The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.) New England Cable Television Assn., Inc. v. DPUC,247 Conn. 95, 03 (1998).
The parties do not dispute that the University, which controls the Storrs campus, satisfies the first part of the aggrievement test, namely that the University has a specific personal and legal interest in the subject matter of the DPUC decision. Rather, Charter argues that the University does not meet the second prong of aggrievement. Charter contends that the University has not been specially and injuriously affected by the DPUC decision. Charter points out that the University allowed Charter's predecessor to wire the campus and that the University has not approached the DPUC to contest Charter's franchise or to seek reimbursement for any damages. Charter also has shown that through HUSKYvision the University has in place its own entertainment and educational cable system.
In opposition to the motion to dismiss, the University has demonstrated that the franchise agreement allows Charter access to the University's Storrs campus and requires Charter's wires to remain in place resulting CT Page 11198 in overcrowding in the University's conduits. Furthermore, in order to develop HUSKYvision, the University expended $750,000, due in part to the presence of Charter's wires in the conduit.
"In light of the fact that standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights," the court is satisfied that the University has established that there is a possibility that a specific personal and legal interest has been injuriously affected by the application of the DPUC order. (Brackets omitted; internal quotation marks omitted.) Bethlehem ChristianFellowship, Inc. v. Planning Zoning Commission, 58 Conn. App. 441, 447
(2000). Therefore, the motion to dismiss is denied.
Henry S. Cohn, Judge