[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before the court is an April 20, 2000 administrative appeal, brought by the plaintiff, Avalon Bay Communities (Avalon), from denial by the defendant, Wilton Inland Wetlands Commission (commission), of Avalon's application for an inland wetlands permit. On November 24, 1999, in connection with a revised site plan application filed with the Wilton planning and zoning commission (PZ), Avalon submitted an application for an inland wetlands permit to the commission. On March 23, 2000, the commission denied Avalon's application.
In its appeal brief, Avalon argues that the commission exceeded its jurisdiction in denying Avalon's application for an inland wetlands permit because the application involves no regulated activities. Avalon further contends that, if the court finds that the commission had jurisdiction over Avalon's application, the commission lacked substantial evidence for its conclusion that development of the parcel would create any impact on the town's wetlands or watercourses and, consequently, the commission acted illegally, arbitrarily and in abuse of its discretion in denying Avalon's application.
 I Procedural History
Avalon commenced this appeal on April 13, 2000, by service of process on Wilton's town clerk, chairman of the commission and on an associate attorney general. On April 20, 2000, Avalon filed its appeal in the Superior Court, judicial district of Stamford-Norwalk at Stamford. On May 4, 2000, Avalon moved to transfer this appeal to the Superior Court, judicial district of New Britain, arguing that the commission improperly asserted jurisdiction over the revised site plan and then denied the application for the purpose of preventing the development of affordable housing in Wilton.[1] On May 15, 2000, the motion to transfer this appeal was granted by the court. The commission filed a motion to transfer this appeal back to the Superior Court, judicial district of CT Page 12588 Stamford-Norwalk, which motion was denied by the court, Cohn, J.
The commission filed its answer on June 30, 2000 and return of record on July 12, 2000. On August 18, 2000, the commissioner for the Connecticut department of environmental protection (DEP) entered his appearance and filed an answer to Avalon's appeal. Avalon filed its brief on September 6, 2000. The DEP filed its brief on September 20, 2000 and Avalon filed a revised brief on October 2, 2000. The commission filed its brief on November 6, 2000 and Avalon filed a reply brief on December 8, 2000. On May 11, 2001, the court heard Avalon's administrative appeal. On July 17, 2001, a site walk was conducted.
 II Facts
On November 24, 1999, Avalon filed a wetlands permit application with the commission seeking to eliminate all regulated activities proposed in its original site development plan.[2] Avalon is a Maryland corporation with a place of business in Wilton, Connecticut. Avalon has a contract to purchase a 10.6 acre parcel located on the east side of Route 7, south of the intersection with Routes 7 and 33 in Wilton, known as 116 Danbury Road, Wilton, Connecticut (the subject property). The subject property is owned by James and Marilyn O'Halloran and is zoned R-1A (single family detached homes of lots at least one acre). The subject property is bordered to the north by Wilton Hills, an eighteen unit multifamily residential development; to the east by single family residences off of Route 33; on the west by Route 7 and on the west side of Route 7 by a variety of commercial and industrial uses.
Adjacent to the Wilton Hills development, the subject property contains approximately .32 acre of inland wetlands, comprising two areas, which are level to very gently sloping. Wetland I is a .30 acre deciduous wooded wetland in the northwest portion of the subject property and is located in a shallow depression with moderate vegetation growth, dense canopy cover and moderate to sparse shrub and herbaceous growth. An intermittent watercourse flows through Wetland 1 from east to west and the watercourse was previously ditched. The watercourse channel is approximately five feet wide and has a fine sandy substrate. Wetland 2 is a .02 acre deciduous wooded wetland in the northeast portion of the subject property, surrounded by wooded upland. Wetland 2 continues off-site to the east, where it is associated with a small pond. The surface of the wetland contains rocks, has a dense canopy cover and shrub understory. The herbaceous vegetation growth within the wetland is sparse.
In its original application to Wilton's PZ, Avalon proposed to CT Page 12589 construct 119 rental units, with twenty-five percent (or 30) units designated as affordable housing, as that term is defined by General Statutes § 8-30g.[3] In connection with this zoning application, Avalon applied to the commission for a permit to relocate an existing driveway further from the regulated areas, requiring 160 cubic yards of disturbance, and to install overflow piping from water quality and stormwater detention structures in two locations, requiring 25 cubic yards of excavation and backfilling.
To address the commission's concerns, stated in its denial of Avalon's initial permit application, the November 24, 1999 permit application that is the subject of this appeal contains no proposed construction within fifty feet of the wetland area or one hundred feet from the drainage ditch/watercourse of Wetland 1 and no site plan activities are proposed in any areas surrounding the off-site wetlands or watercourses. The subject permit application is supported by a November 22, 1999 revision of an environmental assessment report prepared by Soil Science and Environmental Services, Inc., which concludes that Avalon's proposed planned residential development on the subject property was "reviewed and found to cause no direct or indirect wetland or watercourse and waterbody impacts affecting the regulated areas on-site or off-site."
As part of its revised application for a permit, Avalon requested the commission to issue a declaratory ruling that the application did not require a permit because there were no regulated activities associated with Avalon's proposed plans for the subject property. The commission held a hearing on this request on December 9, 2000.[4] The commission could not tell from the presentation made by Avalon at the December 9, 2000 meeting what the impacts would be to the wetlands and watercourses and felt that it was aware of significant public interest in the project to warrant holding a public hearing on the revised application, pursuant to General Statutes § 22a-42a (c)(1)[5] and § 9.1 of the Wilton Inland Wetlands and Watercourse regulations.[6]
The commission held a public hearing on January 4, 2000, and continued the hearing to February 10, then to February 24. The hearing was closed following receipt of more information at the February 24, 2000 hearing. During these hearings, the commission heard from Patricia Sesto, Wilton's director of environmental affairs; Eric Alletzhauser, the attorney representing Avalon; John Milone and Andy Green, professional engineers with Milone MacBroom, who worked on the project; Kenneth Stevens and Jennifer Beno with Soils Science and Environmental Services; Ravi Malviya, a geological engineer with Barakos-Landino; Eric Mas, an environmental engineer with Fuss O'Neill, who reviewed Avalon's revised site plan for Wilton; Dr. Michael Klemens, a herpetologist who discussed the wetland and upland habitat needs of salamanders; and George Logan, a CT Page 12590 principal with the environmental scientists with Rema Ecological Services who provided Avalon's counterpoint to Dr. Klemens' findings.
At its March 9, 2000 meeting, the commission, by a vote of four to two, directed the staff to draft a resolution denying Avalon's permit application for failure to satisfy the inland wetlands regulations, specifically §§ 10.2a, 10.2b, 10.2d 10.2e, 10.2f, 10.2g and 10.3. Referring specifically to § 10.3 of the inland wetlands regulations, the commission cited Avalon's failure to demonstrate that there exists no feasible and prudent alternative which would have less impact on the salamander population and the commission suggested that Avalon could meet its burden under this section by demonstrating more conclusively that, based on expert study at the optimum time of year, the spotted salamander population either does not exist on the site, or exists in such small numbers that the experts consider the population to be terminal. On March 23, 2000, the commission voted four to two to adopt the denial drafted by the staff and notice of the denial was published in the Wilton Villager
on March 30, 2000.
 III Jurisdiction
General Statutes § 22a-43 governs appeals from decisions of inland wetlands commissions and the court acquires and maintains jurisdiction only when the plaintiff complies with all relevant provisions of the statute. Munhall v. Inland Wetlands Commission, 221 Conn. 46, 50,602 A.2d 566 (1992) ("[i]t is fundamental that appellate jurisdiction in administrative appeals is created only by statute and can be acquired and exercised only in the manner prescribed by statute").
 A Aggrievement
Pursuant to General Statutes § 22a-43, "any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to22a-45, inclusive . . . may, within the time specified in subsection (b) of section 8-8 . . . appeal to the superior court. . . ."
"Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . . We traditionally have applied the following two part test to determine whether aggrievement exists: (1) does the allegedly aggrieved party have a specific, personal and legal interest in the subject matter of a decision; and (2) has this interest CT Page 12591 been specially and injuriously affected by the decision." (Citations omitted; internal quotation marks omitted.) Gladysz v. Planning ZoningCommission, 256 Conn. 249, 255-56, ___ A.2d ___ (2001). "Aggrievement is a question of fact for the trial court and the plaintiff has the burden of proving that fact." (Internal quotation marks omitted.) WaterPollution Control Authority v. Keeney, 234 Conn. 488, 493, 662 A.2d 124
(1995).
Avalon alleges that it is aggrieved as the contract purchaser of the subject property from the O'Hallorans. At the hearing on Avalon's appeal on May 11, 2001, the parties stipulated that Avalon has a contract with the O'Hallorans to purchase the subject property and that the O'Hallorans have owned the subject property continuously and without interruption from May 26, 1999, the date of Avalon's initial application to the commission, to the date of the stipulation. Avalon's representative testified that Avalon entered into a one year contract with the O'Hallorans to purchase the subject property after a due diligence period in 1999, extended the contract for twelve months after the initial one year and extended the contract to purchase again in February, 2001.[7]
Prospective purchasers of property may be aggrieved by an administrative agency's decision. Bethlehem Christian Fellowship, Inc.v. Planning Zoning Commission, 58 Conn. App. 441, 445, 755 A.2d 249
(2000). Because Avalon contracted to purchase the subject property from the O'Hallorans, subject to receiving the appropriate permits from the town, it possesses the requisite legal interest to establish aggrievement. Denial of Avalon's permit application by the commission impairs Avalon's ability to develop the subject property and, therefore, "specially and injuriously" affects its legal interest. Gladysz v.Planning Zoning Commission, supra, 256 Conn. 255-56. Accordingly, the court finds that Avalon has established aggrievement for the purposes of General Statutes § 22a-43.
 B Timeliness and Service of Process
An administrative appeal must be "commenced by service of process . . . within fifteen days from the date that notice of the decision was published. . . ." General Statutes § 8-8 (b). "Notice of such appeal shall be served upon the inland wetlands agency and the commissioner [of environmental protection]." General Statutes § 22a-43 (a). The commission published notice of its denial of Avalon's permit application in the Wilton Villager on March 30, 2000. Avalon commenced this appeal on April 13, 2000, by service of process upon Joan Maude Ventres, town clerk, Howard Naylor, chairman of the commission and Jane Scholl, CT Page 12592 associate attorney general, on behalf of the DEP which is less than fifteen days after the commission published notice of its denial of Avalon's permit application on March 30, 2000. This appeal, therefore, is timely and the proper parties were served, pursuant to General Statutes §§ 8-8 (b), 22a-43 (a).
Accordingly, the court has jurisdiction to hear and decide this appeal.
 IV Scope/Standard of Judicial Review
"The purpose of the Inland Wetlands and Watercourses Act (act) is to provide an orderly process in which the rights of landowners to use or develop their land can be balanced with the need to protect the invaluable public resource of wetlands. See General Statutes § 22a-36. The statute, and the regulations adopted to implement it, provide for an application and hearing process through which these competing interests are balanced. See General Statutes § 22a-42a." Woodburn v.Conservation Commission, 37 Conn. App. 166, 170, 655 A.2d 764, cert. denied, 233 Conn. 906, 657 A.2d 645 (1995).
In an appeal from the decision of an inland wetland commission, the appealing party bears the burden of proving that the commission acted improperly. Newtown v. Keeney, 234 Conn. 312, 319, 661 A.2d 589 (1995);Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587-88, 628 A.2d 1286
(1993). "The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. . . ." (Internal quotation marks omitted.) Newtown v.Keeney, supra, 234 Conn. 319.
"In reviewing [a] decision made pursuant to the act, the reviewing court must sustain the [commission's] determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency CT Page 12593 . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Internal quotation marks omitted.)Newtown v. Keeney, supra, 234 Conn. 319-20.
"When deciding matters involving technically complex issues, e.g., pollution control, the board must base its decision upon reliable, probative evidence, typically expert, for the nature and probability of any potential adverse impact on the wetlands. Feinson v. ConservationCommission, 180 Conn. 421, 429, 429 A.2d 910 (1980)." Avalon BayCommunities, Inc. v. Inland Wetlands and Watercourses Commission, Superior Court, judicial district of New Britain, Docket No. 492660 (August 12, 1999, Munro, J.). "In short, we may not substitute our own conclusions for those of the commission. Rather, we are limited to determining whether the commission's conclusions of fact were unreasonable, arbitrary, illegal or an abuse of discretion." (Internal quotation marks omitted.) Sweetman v. State Elections EnforcementCommission, 249 Conn. 296, 332, 732 A.2d 144 (1999).
 Discussion
Avalon advances two arguments in support of its appeal.[8] Avalon first argues that the commission exceeded its jurisdiction by: (1) exercising jurisdiction over a site development plan that undisputably does not propose any construction activities in a wetland, watercourse or adjacent regulated area; (2) concluded, without any basis, that Avalon's construction activities, proposed to occur solely in an upland areas, would have a significant impact on the wetlands; and (3) denied Avalon's permit application on the sole ground that Avalon's plan would disrupt a nonwetland habitat of a common, nonendangered or threatened, species of salamanders. In the alternative, Avalon argues that, even if the commission had jurisdiction over its permit application, there was no evidence in the record of any impact on a wetland or a watercourse and a minor activity permit should have been issued by the commission.[9]
As is more fully discussed below, because the court finds that the commission lacked jurisdiction over Avalon's permit application, there is CT Page 12594 no need to address Avalon's second argument of whether a minor activity permit should have been issued by the commission.
The commission contends that it denied Avalon's November, 1999 application on the grounds that the proposed development would impact the upland habitat of an obligate wetlands species, the spotted salamander, with the result that the salamander population would likely be extinguished, thereby reducing the biodiversity of Wetland 1 and both the on-site and off-site portions of Wetland 2. The commission agrees that Avalon proposed no activities directly in Wetland 1 or 2, or within the applicable fifty or one hundred foot buffers. The commission argues, however, that it had jurisdiction over Avalon's application because the proposed development impacted the wetlands or watercourses by affecting the population of spotted salamanders in the upland portion of the site because spotted salamanders are an obligate wetland species, meaning that they depend on the wetlands for part of their life cycle.
According to the DEP, in its appeal brief, the Inland Wetlands and Watercourses Act, General Statutes §§ 22a-36 through 22a-45 (IWWA), authorizes "municipal regulation of activities affecting the wetlands and watercourses within the territorial limits of the various municipalities or districts." General Statutes § 22a-42 (a). The DEP challenges Avalon's argument that the commission made a fundamentally flawed finding that the salamanders observed on the site are part of the wetland. (DEP appeal brief, page 7.) The DEP argues that salamanders, if present in the wetlands and uplands of the site, are part of the resources of the wetlands. (DEP appeal brief, page 7.) According to General Statutes § 22a-36, one of the purposes of the IWWA is to prevent the "loss of fish and other beneficial aquatic organisms, wildlife and vegetation and the destruction of the natural habitats thereof. . . ."
The DEP further argues that Wilton's Inland Wetlands and Watercourses Regulations, § 2.1.z, is in harmony with and is authorized by the IWWA.[10] The DEP concludes that the IWWA provides the authority to Wilton to at least regulate the activities likely to impact or affect wetlands or watercourses.[11]
The record reveals that, although the commission agrees that Avalon proposed no activities directly in Wetland 1 or 2, or within the applicable fifty or one hundred foot buffers established by Wilton's inland wetlands regulations; (Commission's appeal brief, pages 11-12.); the commission found that Avalon's November 24, 1999 permit application involves activities that may detrimentally affect the wetlands associated with the subject property. Consequently, the commission reasoned that Avalon's application is subject to Wilton's regulatory oversight. CT Page 12595
"[I]nland wetland commissions can now exercise jurisdiction outside their jurisdictional boundaries if activities on "unregulated' land would affect wetlands. . . . Similarly, a commission can impose a condition of off-site compensation of wetlands lost as long as it considers the impact of the application on the subject property. . . . Finally, the general purpose of the act has also been found to permit an agency to assert jurisdiction over land use distant from its jurisdictional boundaries.Mario v. Fairfield, supra, [217 Conn. 164,] 171 [585 A.2d 87 (1991)]." (Citations omitted; internal quotation marks omitted.) Ahearn v. InlandWetlands Agency-Conservation Commission, 34 Conn. App. 385, 391,641 A.2d 812, cert. denied, 230 Conn. 911, 645 A.2d 1015 (1994).
The court finds Avalon's argument persuasive that the legislature amended the IWWA in 1995 and 1996 to limit, rather than expand, an inland wetlands commission's jurisdiction to regulate activities that impact or affect a wetland area. While the IWWA permits an "agency to assert jurisdiction over land use distant from its jurisdictional boundaries";Ahearn v. Inland Wetlands Agency-Conservation Commission, supra,34 Conn. App. 391, the court is unpersuaded that the IWWA can be read so broadly as to provide unlimited jurisdiction for the commission.
In the IWWA, a "municipal inland wetland agency is authorized to establish the boundaries of inland wetlands and watercourse areas within its jurisdiction. Once such boundaries are established pursuant to procedures set forth in § 22a-42a, no regulated activity shall be conducted within such boundaries without a permit issued by the local agency. It is apparent from the foregoing that local inland wetland bodies are not little environmental protection agencies. Their environmental authority is limited to the wetland and watercourse area that is subject to their jurisdiction. They have no authority to regulate any activity that is situated outside their jurisdictional limits. Although in considering an application for a permit to engage in any regulated activity a local inland wetland agency must, under § 22a-41, take into account the environmental impact of the proposed project, it isthe impact on the regulated area that is pertinent, not the environmental impact in general." (Emphasis added.) Connecticut Fund for theEnvironment, Inc. v. Stamford, 192 Conn. 247, 250, 470 A.2d 1214 (1984).
General Statutes § 22a-42a (a) enables a commission to establish the boundaries of the commission's jurisdiction. Section 22a-42a (b) enables a commission to amend or change the boundaries. Therefore, the commission can establish its jurisdictional boundaries and can regulate outside those jurisdictional boundaries upon amendment or change to their inland wetlands regulations. The commission's jurisdiction was further limited by the legislature when Public Acts 1995, No. 95-313 added subsection (f) to General Statutes § 22a-42a. General Statutes § CT Page 1259622a-42a (f) provides: "If a municipal inland wetlands agency regulates activities within areas around wetlands or watercourses, such regulation shall (1) be in accordance with the provisions of the inland wetlands regulations adopted by such agency related to application for, and approval of, activities to be conducted in wetlands or watercourses and (2) apply only to those activities which are likely to impact or affect wetlands or watercourses."
Contrary to the suggestion made by the DEP in its brief and in the letter sent to the commission, § 22a-42a (f) allows a commission to regulate activities within areas around wetlands or watercourses as long as the regulations accord with other regulations governing the application and approval for activities taking place in wetlands and watercourses, and as long as the regulated activities around the wetlands and watercourses are likely to impact or affect the wetlands or watercourses. Wilton adopted regulations establishing a fifty foot buffer around wetlands and a one hundred foot buffer around watercourses in accordance with General Statutes § 22a-42a (f).[12] Accordingly, the commission can regulate activities within those areas established by its regulations. If Wilton chooses to regulate activities outside of those areas established by its regulations, it may do, so as long as it follows the notice and hearing process outlined by General Statutes § 22a-42a (b).
The jurisdiction "of an inland wetlands agency is extremely limited in that it can consider only matters that impact on designated wetlands areas." Tanner v. Conservation Commission, 15 Conn. App., 336, 339,544 A.2d 258 (1988). The court finds that both DEP and the commission urges too broad a reading of the IWWA to support the exercise of the commission's jurisdiction on Avalon's permit application. The commission admits that Avalon's proposed activities do not fall within the regulated buffers, yet it denied Avalon's permit application because of a potential impact on an obligate wetlands species upland from these buffers. Furthermore, there is evidence in the record that neither the commission's expert, nor Avalon's experts, could quantify the extent of the salamander population at the site, so the commission based its denial on inconclusive and speculative data.[13]
Therefore, the court finds that the commission did not have jurisdiction over Avalon's revised application for an inlands wetlands permit. Avalon's appeal from the commission's denial of its revised permit application is, therefore, sustained.
 CONCLUSION
In reviewing the record, statutes and municipal regulations, the court CT Page 12597 finds that the commission acted outside of its jurisdiction over Avalon's revised inland wetlands permit application. Accordingly, the court sustains Avalon's appeal and remands this matter to the commission with direction to act in a manner consistent with the court's opinion.
The court
By Munro, J.