HAYES FAMILY LIMITED PARTNERSHIP *v.*
PLANNING AND ZONING COMMISSION
OF THE TOWN OF MANCHESTER
(AC 26726)

Bishop, Rogers and Peters, Js.

Argued May 23—officially released October 24, 2006

*Stephen T. Penny*, for the appellant (plaintiff).

*John F. Sullivan*, assistant town attorney, for the appellee (defendant).

*Opinion*

ROGERS, J. The plaintiff, the Hayes Family Limited Partnership (Hayes), appeals from the judgment of the trial court dismissing Hayes' appeal from the decision of the defendant, the planning and zoning commission of the town of Manchester.[1] The main issue presented

---

[1] The zoning appeal originally was initiated and prosecuted by Hayes, which owned the affected property during the relevant period. While the case was pending in this court, Hayes sold most of that property to Manchester Tolland Development, LLC, which is pursuing development of the property in a similar fashion as was Hayes. Accordingly, we subsequently granted Hayes' motion to add Manchester Tolland Development, LLC, as a party plaintiff. See *New Milford Savings Bank* v. *Mulville*, 56 Conn. App. 521, 524, 744 A.2d 447 (2000) (permitting party to intervene in appellate proceedings when "[t]he judgment to be rendered [will] affect the proposed intervenor's direct or personal rights"); *Fuller* v. *Planning & Zoning Commission*, 21 Conn. App. 340, 345–46, 573 A.2d 1222 (1990) (interest in zoning appeal may be transferred along with subject property); see also Practice Book § 62-5.

Hayes remains aggrieved because it has retained a portion of the land in question and further, pursuant to the sale-purchase contract between Hayes and Manchester Tolland Development, LLC, Hayes stands to receive additional consideration in the event this appeal results in a reversal of the

by Hayes to the defendant, and by Hayes and the defendant to the court, was whether Hayes' challenge to a 1998 amendment of the Manchester zoning regulations (regulations) on the ground that there was improper public notice was time barred by General Statutes § 8-8 (r).[2] The court dismissed the appeal as untimely pursuant to that statute. Hayes claims that the court improperly dismissed the appeal because § 8-8 (r) does not apply to actions taken during the time period in question or, alternatively, that the statute is impermissible retroactive legislation abrogating substantive legal rights. We agree that § 8-8 (r) is inapplicable but conclude that a different statutory provision, Special Acts 1999, No. 99-7, § 6 (c), applies to validate the amendment at issue.[3] Construing Hayes' alternative challenge directed at the applicable provision, we conclude further that Special Act 99-7, § 6 (c), is a proper exercise of legislative power. Accordingly, we affirm the judgment of the trial court.[4]

The following facts and procedural history are relevant. Manchester Tolland Development, LLC, is the current owner of a 43.5 acre parcel of land in the town of

defendant's decision. See *Primerica* v. *Planning & Zoning Commission*, 211 Conn. 85, 93–95, 558 A.2d 646 (1989) (concluding that transferor of property subject to zoning appeal remained aggrieved due to retention of substantial financial interests in property); compare *Fuller* v. *Planning & Zoning Commission*, supra, 21 Conn. App. 342 n.3 (noting that owner who conveyed interest in property absolutely no longer had interest in zoning appeal).

[2] General Statutes § 8-8 (r) provides that "[i]n any case in which a board fails to comply with a requirement of a general or special law, ordinance or regulation governing the content, giving, mailing, publishing, filing or recording of any notice either of a hearing or of an action taken by the board, any appeal or action by an aggrieved person to set aside the decision or action taken by the board on the grounds of such noncompliance shall be taken not more than one year after the date of that decision or action."

[3] Special Act 99-7 was not brought to the attention of either the defendant or the trial court. Subsequent to oral argument before this court, we ordered that the parties file simultaneous supplemental briefs addressing the meaning of the act and its applicability to the facts of this case.

[4] Because we conclude that the court properly dismissed the appeal, we do not reach Hayes' claim as to its merits.

Manchester on which it seeks to construct multifamily housing. Hayes, a prior owner of that land, sought to develop it similarly. See footnote 1. On April 20, 1998, subsequent to a public hearing, the defendant made certain amendments to the section of the regulations governing planned residential development zones. A new provision established that in such a zone, "[t]he total number of multi-family dwelling units shall not exceed ten (10) per acre of the multi-family dwelling site excluding wetlands *and slopes greater than 15%.*" (Emphasis added.) Manchester Zoning Regs., art. II, § 7.02.03 (c). The italicized portion of the quoted regulation has the effect of reducing substantially the number of units that potentially may be constructed on the subject property.[5]

On May 15, 2003, Hayes filed an application with the defendant for a change of regulations, requesting that the defendant delete the portion of § 7.02.03 (c) that excludes slopes greater than 15 percent from the density calculation. At a September 3, 2003 public hearing concerning the application, Hayes argued that the defendant had not given proper public notice of the proposed amendment creating that requirement, nor did it file a copy thereof in the town clerk's office at least ten days prior to the hearing at which the amendment was considered. See General Statutes (Rev. to 1997) § 8-3 (a).[6] Hayes also argued that the amendment

---

[5] According to the court, application of "the 15 percent slope provision to [Hayes'] land eliminates 7.15 acres from development [and] reduces the allowable units on the site from 392 to approximately 320."

[6] General Statutes (Rev. to 1997) § 8-3 (a) provides in relevant part that no zoning regulation "shall become effective or be established or changed until after a public hearing in relation thereto, held by a majority of the members of the zoning commission . . . at which parties in interest and citizens shall have an opportunity to be heard. Notice of the time and place of such hearing shall be published in the form of a legal advertisement appearing in a newspaper having a substantial circulation in such municipality at least twice at intervals of not less than two days, the first not more than fifteen days nor less than ten days, and the last not less than two days, before such hearing, and a copy of such proposed regulation . . . shall be

substantively was unnecessary.[7] On September 15, 2003, the defendant denied Hayes' request to delete the portion of the regulation excluding slopes greater than 15 percent from the density calculation.

On October 1, 2003, Hayes filed an appeal from the defendant's decision to the Superior Court; see General Statutes § 8-8; claiming that it had established at the September 3, 2003 hearing that no prior public notice had been given of the 1998 amendment to § 7.02.03, and, therefore, the amendment was void as a matter of law. The defendant filed an answer and raised two special defenses; first, that any failure of notice in 1998 was cured by its consideration of and action on Hayes' May 15, 2003 application and, second, that Hayes' claim was untimely.

A hearing was held on October 29, 2004. In a March 18, 2005 memorandum of decision, the court dismissed Hayes' appeal. After determining that Hayes was aggrieved by the defendant's action in passing the amendment, the court nevertheless concluded that the appeal was time barred. It noted first that, although the appeal was taken from the defendant's September 15, 2003 decision, it essentially was a challenge to the defendant's 1998 amendment to § 7.02.03 of the regulations. The court agreed with the defendant that Hayes' appeal from that action, which was based on a claim of irregularity regarding public notice, was barred by § 8-8 (r) because it was not brought within one year from the date of the challenged action. See footnote 2. It rejected Hayes' arguments that § 8-8 (r) was not intended to apply to appeals stemming from claimed irregularities predating January 1, 1999, and further,

filed in the office of the town . . . clerk . . . in such municipality . . . for public inspection at least ten days before such hearing . . . ."

[7] On appeal, Hayes has not pursued any of its arguments relating to the substance of § 7.02.03 (c).

that the statute could not properly apply retroactively from its passage in 1999. This appeal followed.

## I

At the outset, we must address an argument raised by the defendant because it raises a question of subject matter jurisdiction. The defendant argues that the court improperly found that Hayes was aggrieved by the amendment of § 7.02.03. Specifically, it claims that, because the subject property is zoned rural residential and the amendment at issue applies to the planned residential development zone, Hayes was not specially and injuriously affected by the amendment. According to the defendant, "alleging the existence of a defective zoning regulation merely shows a general injury to the public." We do not agree.

In zoning matters, aggrievement is "the key to access to judicial review . . . ." (Internal quotation marks omitted.) *RYA Corp.* v. *Planning & Zoning Commission*, 87 Conn. App. 658, 663, 867 A.2d 97 (2005). "Proof of aggrievement is essential to a trial court's jurisdiction of a zoning appeal." (Internal quotation marks omitted.) *Bethlehem Christian Fellowship, Inc.* v. *Planning & Zoning Commission*, 58 Conn. App. 441, 443, 755 A.2d 249 (2000).

"[T]he fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision . . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that

some legally protected interest . . . has been adversely affected." (Citation omitted; internal quotation marks omitted.) Id., 443–44. The question of aggrievement is a factual one. Id., 444. Accordingly, "[o]ur review is to determine whether the judgment of the trial court was clearly erroneous or contrary to the law." (Internal quotation marks omitted.) Id., 445.

In concluding that Hayes was aggrieved by the amendment of § 7.02.03, the court made the following factual findings: Hayes owned the parcel of land affected by the petition, which is in a rural residential zone; the property is bounded on two sides by land in the planned residential development zone and housing multifamily residential developments; the planned residential development zone is a floating zone;[8] Hayes had applied for its property to be designated in the planned residential development zone but withdrew its application "for technical reasons"; and there are few parcels left undeveloped in town to which the planned residential development designation could apply, the subject property being one of them. The defendant does not dispute that the court's findings are supported by evidence in the record.

---

[8] "A floating zone is a special detailed use district of undetermined location in which the proposed kind, size and form of structures must be preapproved. It is legislatively predeemed compatible with the area in which it eventually locates if specified standards are met and the particular application is not unreasonable. . . . It differs from the traditional Euclidean zone in that it has no defined boundaries and is said to float over the entire area where it may eventually be established. . . . A floating zone . . . carves a new zone out of an existing one." (Citation omitted; internal quotation marks omitted.) Heithaus v. Planning & Zoning Commission, 258 Conn. 205, 217, 779 A.2d 750 (2001).

"[A] floating zone is approved in two discrete steps—first, the zone is created in the form of a text amendment, but without connection to a particular parcel of property—and second, the zone is later landed on a particular property . . . ." Campion v. Board of Aldermen, 278 Conn. 500, 518, 899 A.2d 542 (2006). "By definition, a floating zone does not apply to a specific piece of property." Id., 519.

In determining that the foregoing facts supported a finding of aggrievement, the court relied on, inter alia, the decision of our Supreme Court in *Harris* v. *Zoning Commission*, 259 Conn. 402, 788 A.2d 1239 (2002). In *Harris*, owners of large parcels of undeveloped land in the town of New Milford claimed that they were aggrieved by the adoption of a zoning amendment, applicable generally to residential zones, that, similar to the regulation at issue here, excluded certain areas of a parcel from the calculation used to determine whether that parcel conformed to the minimum lot size required for development. The amendment had the effect, on undeveloped parcels, of reducing the potential number of lots. In concluding that the parties were aggrieved, the court reasoned that, although the amendment by its terms applied to the town as a whole, in reality, only a limited portion of the land in the town, i.e., that owned by the plaintiffs, actually was affected. The plaintiffs, therefore, had a personal interest in the regulation distinguishable from the community as a whole, and the regulation specially and injuriously affected them by reducing the development potential of their properties. Accordingly, they were aggrieved. See id., 411–15; see also *Lewis* v. *Planning & Zoning Commission*, 62 Conn. App. 284, 291–93, 771 A.2d 167 (2001) (employing similar analysis to similar regulation).

We conclude that the court in this case properly used analogous reasoning in finding Hayes aggrieved by the amendment of § 7.02.03. Although the amendment by its terms is of general applicability, in practice, it potentially applies only to a limited portion of land in the town, some of which was owned by Hayes. Although Hayes' land was not yet designated as within the planned residential development zone, it is in the very nature of a floating zone that it does not apply to a particular area of town until a specific application is approved. See footnote 8. Hayes demonstrated that it

owned and wanted to develop a particular parcel of land that would be directly affected by the regulation at issue and, therefore, had a personal interest distinguishable from the community as a whole. The court's factual findings as to the nature of the subject property, and the properties surrounding it, indicate a sufficient likelihood of approval such that the regulation will apply to reduce the property's development potential.[9] That reduction in development potential specially and injuriously affected Hayes. See footnote 5.

"Aggrievement does not demand certainty, only the possibility of an adverse effect on a legally protected interest." *Lewis* v. *Planning & Zoning Commission,*

[9] We note that in neither *Harris* nor *Lewis* had the plaintiffs actually submitted applications to subdivide their property. In *Lewis,* we explicitly rejected the defendant's contention that that circumstance rendered the plaintiffs' alleged injury too speculative. *Lewis* v. *Planning & Zoning Commission,* supra, 62 Conn. App. 293–96. We disagreed with the notion that to be aggrieved, the plaintiffs first had to file a subdivision application and receive an adverse decision "when they [already had] demonstrated unequivocally that the amendments [had] diminished the value of their property." Id., 294. We reasoned that "[a] plaintiff is entitled to ascertain, with reasonable certainty, whether a certain regulation is valid and that regulation's effect on her rights as a property owner"; id., 295; and that the enactment of the regulation at issue had caused the plaintiffs to suffer "an immediate economic impact . . . ." Id., 296.

We observe further that we have examined the decisions of our Supreme Court in *Sheridan* v. *Planning Board,* 159 Conn. 1, 13, 266 A.2d 396 (1969), and *Schwartz* v. *Town Plan & Zoning Commission,* 168 Conn. 20, 25–26, 357 A.2d 495 (1975), holding that the plaintiffs were not aggrieved by the enactment of floating zone regulations not yet applicable to any particular properties, and conclude that they are distinguishable from the present matter. Both of those cases involved general challenges, at the outset of their enactment, to regulations creating new floating zones. There is no indication in either case, as there is in the present matter, that the plaintiffs owned property whose development potential was impacted directly by a specific provision in those regulations. Under the circumstances, the *Sheridan* court concluded that the plaintiffs in that case had demonstrated "mere generalizations and fears [insufficient] to establish aggrievement." (Internal quotation marks omitted.) *Sheridan* v. *Planning Board,* supra, 14. Here, in contrast, Hayes demonstrated that it, unlike the community as a whole, owned property likely to be affected by a particular regulation.

supra, 62 Conn. App. 288. We conclude that Hayes demonstrated that possibility and, therefore, that the court properly found Hayes aggrieved by the amendment of § 7.02.03.

## II

Hayes argues first that the court improperly concluded that this action was untimely pursuant to § 8-8 (r) because that statute was not intended to bar challenges to failures of notice predating January 1, 1999. We agree with Hayes, but conclude nevertheless that a different provision, Special Act 99-7, § 6 (c), applies to validate the defendant's April 20, 1998 amendment of its regulations regardless of any failure of notice.

"The interpretation of a statute, as well as its applicability to a given set of facts and circumstances, involves a question of law and our review, therefore, is plenary." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 629, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005); see also *Florian* v. *Lenge*, 91 Conn. App. 268, 279, 880 A.2d 985 (2005) (whether action is time barred is question of law subject to plenary review).

If the meaning or applicability of a statute is clear from its text, this court in construing it should look no further. See General Statutes § 1-2z. If, however, the applicability of a provision is not so apparent, we must undertake "a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common

law principles governing the same general subject mat-
ter." (Internal quotation marks omitted.) *Russell* v. *Rus-
sell*, supra, 91 Conn. App. 629.

Section 8-8 (r) provides in relevant part that when a
zoning commission "fails to comply with a requirement
of a general or special law . . . governing the content,
giving, mailing, publishing, filing or recording of any
notice either of a hearing or of an action taken by the
[commission], any appeal or action by an aggrieved
person to set aside the decision or action taken by the
[commission] on the grounds of such noncompliance
shall be taken not more than one year after the date of
that decision or action." The subsection does not
include any express limitations as to its applicability,
nor does it reference any other provision containing
such a limitation. We therefore turn to the legislative
history of § 8-8 (r) for guidance.

Section 8-8 is a comprehensive statute governing zon-
ing appeals and frequently is the subject of amendment.
Subsection (r) has its genesis in Public Acts 1999, No.
99-238 (P.A. 99-238), "An Act Concerning Validating Pro-
visions." Section 5 of P.A. 99-238 repealed § 8-8 and
substituted a version of the statute identical to the one
previously existing except for the addition of subsection
(r).[10] Section 8 of P.A. 99-238 provides that the "act shall
take effect from its passage, except that sections 1 to
6, inclusive, shall take effect July 1, 2000." Prior to that
effective date, however, the legislature passed Public
Acts 2000, No. 00-84 (P.A. 00-84), which, in § 3, repealed
§ 8 of P.A. 99-238 and substituted the following: "Public
[A]ct 99-238 shall take effect from its passage, except
that sections 1 to 6, inclusive, shall take effect July 1,

---

[10] The version of subsection (r) created by § 5 of P.A. 99-238 provided for
a two year appeal period from actions of zoning entities on the basis of
improper notice. Thereafter, the subsection was amended to reduce that
appeal period to one year, as reflected in the current codification. See Public
Acts 2001, No. 01-110.

2000, and sections 1, 2 and 3, subsection (f) of section 4 and *sections 5* and 6 *shall apply to errors, irregularities and omissions occurring on or after January 1, 1999.*" (Emphasis in original.)

Section 8-8 of the General Statutes subsequently was amended several more times prior to Hayes' institution of this action, but none of the amendments refers or pertains to the applicability date of subsection (r).[11] Nevertheless, the applicability date for § 5 of P.A. 99-238 (now § 8-8 [r]) established by § 3 of P.A. 00-84 does not appear in the codified version of the statute.[12] On

---

[11] The court summarized the later amendments to General Statutes § 8-8 as follows: "Subsequent to the adoption of P.A. 00-84 on May [16], 2000, the legislature adopted Public Acts 2000, No. 00-108. That act provided [in § 2] that '[s]ection 8-8 of the general statutes, as amended by section 5 of public act 99-238, is repealed . . . .' The act amended § 8-8 by eliminating the need for a recognizance on appeal and allowed for the preparation of a transcript by other than the appellant agency. It left intact the provisions of subsection (r) in subsection (q). The act was effective October 1, 2000. No reference was made to P.A. 00-84 or its language regarding the application of certain of its sections to only errors, irregularities and omissions occurring on or after January 1, 1999."

The court further stated: "[T]he legislature has continued to amend § 8-8, and subsequent amendments do not reference the language of § 3 of P.A. 00-84 . . . . On May 31, 2001, the legislature adopted Public Acts 2001, No. 01-47, which amended § 8-8 to provide for a stay of proceedings while mediation of an appeal was pending and renamed subsection (q) to (r). On June 20, 2001, Public Acts 2001, No. 01-110, was adopted, and it specifically repealed subsection (q) of § 8-8 [now subsection (r)] and amended it to [provide for a one year appeal period instead of a two year period as previously]. In Public Acts 2001, No. 01-195, the legislature made technical amendments to § 8-8 not affecting the substantive language of subsection [r]. Subsection (b) of § 8-8 was amended by Public Acts 2002, No. 02-74, to allow for appeals from decisions on site plans."

[12] We note, however, that the effective date and applicability date for § 5 of P.A. 99-238 [now General Statutes § 8-8 (r)], both of which were established by § 3 of P.A. 00-84, appear in the history section prepared by the legislative commissioner's office that immediately follows the statutory text of § 8-8. Prefatory information in the General Statutes instructs users to consult history sections for effective date information but cautions that those "histories are not to be read or considered as statements of legislative intent," nor are they "intended as a substitute for the full text of the public or special acts listed in the source of each section." General Statutes, preface, p. vii. We have inspected the five other statutory provisions whose applicability and effective dates were established by § 3 of P.A. 00-84, and observe

the basis of that circumstance, the court concluded "that the limiting language of [P.A. 00-84, § 3] is no longer in effect." It reasoned, essentially, that § 3 of P.A. 00-84 had been repealed by implication because it never was codified. We disagree with that conclusion.

A review of all of the subsequent amendments to § 8-8; see footnote 11; demonstrates that none of those amendments explicitly repealed P.A. 00-84 or, by substance, were in irreconcilable conflict with that act. See General Statutes § 2-30b (a).[13] It is well established in our jurisprudence that implied repeal of a statute is not favored and should not be presumed. See, e.g., *Rivera v. Commissioner of Correction*, 254 Conn. 214, 242, 756 A.2d 1264 (2000); *Nash v. Yap*, 247 Conn. 638, 648, 726 A.2d 92 (1999); see also 1A J. Sutherland, Statutes and Statutory Construction (6th Ed. Singer 2002) § 23:10, p. 480 ("[r]eports abound with decisions reflecting and endorsing [the] presumption against repeal by implication").[14]

---

that the applicability and effective date information for those provisions does not appear in the respective statutory text, but rather, only in the respective history sections.

[13] General Statutes § 2-30b (a) provides that when two acts passed in the same legislative session that amend the same statute or act are not in irreconcilable conflict, both should be given effect. This provision pertains solely to consideration of Public Acts 2000, No. 00-108, the only other amendment to General Statutes § 8-8 passed in the same legislative session as P.A. 00-84.

[14] The defendant argues that § 2 of Public Acts 2000, No. 00-108 (P.A. 00-108), which provides in relevant part that "[s]ection 8-8 of the general statutes, as amended by section 5 of public act 99-238, is repealed," effectively nullified P.A. 00-84 because, given the contemplated "repeal," there no longer was anything to which P.A. 00-84 could apply. This argument is unpersuasive.

Typically, our General Assembly's "nomenclature of 'repeal' manifests [its] intent to modify and to amend prior legislation, and not to extinguish it ab initio"; *Nash v. Yap*, supra, 247 Conn. 647; and such clearly was the case here. Although P.A. 00-108 by its terms "repealed" the recently amended General Statutes § 8-8, it thereafter reinstituted it in large part with, most importantly, subsection (r) left fully intact. See footnote 11.

Generally, "[w]here a particular statute is incorporated into another statute by specific or descriptive words, the presumption is that the legislature did not intend that modification or repeal of the adopted statute should affect

Moreover, our examination of documents comprising the legislative history of P.A. 99-238 and P.A. 00-84 confirms that the legislature specifically intended the limitation period of § 8-8 (r) to apply only to challenges to failures of notice postdating January 1, 1999, as expressed in the latter act. That history indicates that, prior to the enactment of P.A. 99-238, the legislature customarily approved omnibus validating acts on a biennial basis in odd numbered years. Those provisions, passed as special acts, were intended to give legal effect to certain past acts or transactions that otherwise would be ineffective because of a failure to comply with some requirement of the law.[15] Each validating act was intended to retroactively cure defects arising since the effective date of the last such act.

By passage of P.A. 99-238, the legislature intended to accomplish *prospectively* and comprehensively what it previously had effected *retroactively* and piecemeal through the omnibus validating acts, i.e., in regard to actions of zoning entities, instead of curing failures of notice for the previous two years by a general validating provision, P.A. 99-238 prospectively created a new two year limit (now one year) within which to challenge

the adopting statute. . . . Moreover, *where one statute makes provision for the enforcement of another, it must be presumed that the legislative intent is that the former will apply to the enforcement of any subsequent amendment of the latter.*" (Citations omitted; emphasis added.) *Romanov* v. *Dental Commission*, 142 Conn. 44, 52, 111 A.2d 9 (1955). Hence, although the General Assembly, through P.A. 00-108, repealed and amended § 8-8 as modified by P.A. 99-238, we must presume that it intended P.A. 00-84 to apply to § 8-8 (r) postamendment, just as it applied preenactment.

[15] Since 1967, each omnibus validating act has included a provision that cures defects in notice by zoning entities. See Special Acts 1999, No. 99-7, § 6 (c); Special Acts 1997, No. 97-6, § 6 (c); Special Acts 1995, No. 95-1, § 6 (c); Special Acts 1993, No. 93-17, § 6 (c); Special Acts 1991, No. 91-1, § 6 (c); Special Acts 1989, No. 89-6, § 6 (c); Special Acts 1987, No. 87-12, § 6 (c); Special Acts 1985, No. 85-47, § 6 (c); Special Acts 1983, No. 83-7, § 21; Special Acts 1981, No. 81-33, § 21; Special Acts 1979, No. 79-10, § 20; Special Acts 1977, No. 77-61, § 20; Special Acts 1975, No. 75-16, § 20; Special Acts 1973, No. 73-113, § 20; 35 Spec. Acts 95, No. 102, § 17 (1971); 34 Spec. Acts 357, No. 282, § 17 (1969); 33 Spec. Acts 493, No. 382, § 17 (1967).

actions taken without proper notice. As originally enacted, P.A. 99-238 was to take effect on July 1, 2000.

Because the new act was to operate prospectively only, the legislature also passed one last omnibus validating act to cure defects that had arisen since the last such act. That validating act appears as Special Act 99-7, and § 6 (c) thereof pertains to actions taken by zoning entities when sufficient notice was lacking.[16] Pursuant to § 10, Special Act 99-7 applies "to any defect, omission or irregularity enumerated [in the act] which occurred on or before January 1, 1999." See generally Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1999 Sess., pp. 454–60; see also Law Revision Commission, Validating Acts Review Committee, October 5, 1999 Memo re Proposed Technical Changes to 1999 Validating Act, Analysis of Connecticut Validating Acts § 6, and Report to the Judiciary Committee-Public Act 99-238 (except § 7) & Special Act 99-7, available at "http://www.cga.ct.gov/lrc/Validating%20Acts/ValidatingActs/Main.htm" (accessed 9/18/06). Accordingly, Special Act 99-7 applies to validate any alleged defect in notice of the defendant's action in amending § 7.02.03 of its regulations in 1998.[17]

---

[16] Section 6 (c) of Special Act 99-7 provides: "Any and all actions taken by any planning commission, zoning commission, planning and zoning commission, zoning board of appeals, building code board of appeals, inland-wetland agency or any other commission, board, agency or municipal official, including a legislative body, exercising the powers of any such commissions, otherwise valid except that said planning commission, zoning commission, planning and zoning commission, zoning board of appeals, building code board of appeals, inland-wetland agency or other commission, board, agency or municipal official, including a legislative body, failed to comply with the requirement or requirements of any general or special law, ordinance or regulation governing the contents, giving, mailing, publishing, filing or recording of any notice, either of the hearing or of the action taken, is validated, provided no such action shall be validated if an appeal from such action is pending in any court or the time for taking such appeal has not expired as of the effective date of this act." Similar provisions are included in prior validating acts. See footnote 15.

[17] Subsequent to the passage of Special Act 99-7 and P.A. 99-238, it was discovered that an eighteen month interval existed between the period covered by Special Act 99-7 and the effective date of P.A. 99-238. Specifically,

In sum, Hayes is correct that § 5 of P.A. 99-238, which is codified as § 8-8 (r) of the General Statutes, does not apply to errors, irregularities and omissions occurring in 1998 and, therefore, that provision did not operate to bar Hayes' claim that the defendant failed to give proper notice when amending § 7.02.03 of its regulations. Accordingly, the court's determination in this regard was improper. We conclude nevertheless that Special Act 99-7, § 6 (c), does apply to cure 1998 notice defects and, thus, defeats Hayes' action.

## III

Hayes argues alternatively that even if the legislature intended § 8-8 (r) to apply to acts predating its passage, the statute still should be held inapplicable because it is improper retroactive legislation abrogating substantive rights. According to Hayes, the notice requirements attendant to the amendment of zoning regulations are substantive, mandatory and jurisdictional and, hence, are not a proper subject of retroactive legislation.[18] We address Hayes' argument but construe it as a challenge to Special Act 99-7, § 6 (c), rather than § 8-8 (r).[19] So construed, Hayes' claim fails.

neither act pertained to errors or omissions occurring between January 1, 1999, and July 1, 2000, creating what was described as a "validation gap." It was this circumstance that led to the passage of P.A. 00-84, which closed that gap by moving the applicability date of P.A. 99-238 back and making the relevant provisions thereof applicable "to errors, irregularities, and omissions occurring on or after January 1, 1999." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 9, 2000 Sess., p. 3013, testimony of David L. Hemond, chief attorney, law revision commission; see also Law Revision Commission, Validating Acts Review Committee, Recommendations Made to the Judiciary Committee-2000 Session, available at "http://www.cga.ct.gov/lrc/Validating%20Acts/ValidatingactsMain.htm" (accessed 9/18/06).

[18] In arguing this point, Hayes directs us to this court's decision in *Taft* v. *Wheelabrator Putnam, Inc.*, 55 Conn. App. 359, 742 A.2d 366 (1999), cert. granted, 252 Conn. 918, 919, 744 A.2d 439, 440, vacated, appeal dismissed, 255 Conn. 916, 763 A.2d 1044 (2000). Although that decision was published, it subsequently was vacated on appeal to our Supreme Court and should not be cited as authority.

[19] In its supplemental brief; see footnote 3; Hayes, citing additional authorities, essentially recast its arguments as to the invalidity of General Statutes § 8-8 (r) to direct them at Special Act 99-7, § 6 (c).

As previously explained, § 6 (c) or similar provisions have been part of the omnibus validating acts passed biennially by the legislature prior to 1999. See footnote 15. The applicable law regarding validating acts has been stated by our Supreme Court as follows: "The effect of validating acts is to make legal and regular that which was illegal and irregular. The legislature may cure by subsequent enactment the nonobservance of a requirement which it originally might have dispensed with, provided that vested rights have not intervened . . . ." (Internal quotation marks omitted.) *Manchester Environmental Coalition* v. *Stockton,* 184 Conn. 51, 71, 441 A.2d 68 (1981), overruled on other grounds by *Waterbury* v. *Washington,* 260 Conn. 506, 556, 800 A.2d 1102 (2002). "If the irregularity sought to be cured consists in a mode or manner of doing of some act which the [l]egislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law." *Sanger* v. *Bridgeport,* 124 Conn. 183, 186, 198 A. 746 (1938).

It is true that, in cases involving deficient notice in zoning matters, Connecticut's appellate courts repeatedly have refused to consider the adequacy of public notice to be merely a procedural matter and consistently have treated failure to give proper public notice as a substantive, jurisdictional defect rendering agency actions void. See, e.g., *Wilson* v. *Planning & Zoning Commission,* 260 Conn. 399, 404, 796 A.2d 1187 (2002); *Lauver* v. *Planning & Zoning Commission,* 60 Conn. App. 504, 509, 760 A.2d 513 (2000); *Cocivi* v. *Plan & Zoning Commission,* 20 Conn. App. 705, 707, 570 A.2d 226, cert. denied, 214 Conn. 808, 573 A.2d 319 (1990). Furthermore, many courts have held that jurisdictional defects cannot be cured by retroactive legislation. See 2 J. Sutherland, Statutes and Statutory Construction (6th Ed. Singer 2001) § 41:14, p. 474. The facts of this

case, however, present an instance of a jurisdictional defect that properly may be cured retroactively.

Specifically, "[i]t is important to distinguish between 'jurisdictional' requirements prescribed by constitutional provisions and those established by ordinary legislation." Id., p. 475. In regard to the latter, "the legislature can legalize actions taken without compliance with [purely] statutory requirements by which a . . . public agency acquires jurisdiction." Id. Conversely, retroactive legislation purporting to cure constitutionally based jurisdictional defects underlying agency action potentially may implicate procedural due process. Id. "If the effect of legalizing acts of public officers would be to permit the taking of property without notice and hearing, the constitutional guaranty of procedural due process is violated, and the attempt at validation must fail. This has been the real basis for decision in the cases refusing to sustain curative acts directed at jurisdictional defects." Id., pp. 475–76; see also *Montgomery* v. *Branford*, 107 Conn. 697, 707, 142 A. 574 (1928) ("statute will not be permitted to act retrospectively so as to validate what was before void *because in conflict with [the] State or Federal constitution[s]*" [emphasis added]); 16B Am. Jur. 2d 192, Constitutional Law § 694 (1998) (retroactive acts that operate so as to take away property rights may be unconstitutional and void).

The present matter concerns the adoption of a regulatory amendment, allegedly without proper notice. When a zoning entity adopts regulations, it acts in a legislative capacity. See *Harris* v. *Zoning Commission*, supra, 259 Conn. 415–16. "The fact that the proceeding is legislative, rather than adjudicative, in nature plays a role in the determination of what process is due." *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 555, 600 A.2d 757 (1991). As our Supreme Court has made clear, when a zoning entity is "acting

in its legislative capacity, no notice or hearing [is] necessary to satisfy the requirements of due process of law." *Burke* v. *Board of Representatives*, 148 Conn. 33, 40, 166 A.2d 849 (1961); see also 16B Am. Jur. 2d 498, supra, § 907 ("[d]ue process requires a notice and hearing only in quasi-judicial or adjudicatory settings and not in the adoption of general legislation"); cf. 2 E. Yokley, Zoning Law & Practice (4th Ed. MacGregor 2001) § 11-7, pp. 11-55–11-57 (failure to provide notice of zoning amendment not jurisdictional defect where statute fails to provide for notice and hearing).

Given the foregoing, we conclude that, although the notice requirements of General Statutes (Rev. to 1997) § 8-3 (a) have been held to be substantive and jurisdictional, they are creatures of statute and are not constitutionally required. Because the legislature might originally have dispensed with a notice requirement in this context, it properly could cure the nonobservance thereof by subsequent enactment. See *Manchester Environmental Coalition* v. *Stockton,* supra, 184 Conn. 71; *Sanger* v. *Bridgeport,* supra, 124 Conn. 186. Consequently, any failure by the defendant to observe the notice requirements when amending its regulations in 1998 properly was cured by the validating provision in Special Act 99-7, § 6 (c). See *Connecticut State Employees Assn., Inc.* v. *Connecticut Personnel Policy Board,* 165 Conn. 448, 455, 334 A.2d 909 (1973) (board's failure to observe statutory notice, petition, hearing and approval requirements of Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., cured by validating act); *Kelly* v. *Planning & Zoning Commission,* 13 Conn. App. 446, 447–48, 537 A.2d 509 (1988) (board's failure to provide supplemental notice required by town regulation cured by validating act).

Moreover, we are not persuaded that Special Act 99-7, § 6 (c), impaired any vested rights of Hayes. That provision removed Hayes' right to bring, at any time,

an action challenging the defendant's amendment of its regulations without the required statutory notice. "To be vested, a right must have become [e.g.] a title, legal or equitable, to the present or future enjoyment of property, or to the present or future . . . enforcement of a demand, or a legal exemption from a demand made by another." (Internal quotation marks omitted.) *Manchester Environmental Coalition* v. *Stockton,* supra, 184 Conn. 71. A right is not vested "unless it amounts to something more than a mere expectation of future benefit or interest founded upon an anticipated continuance of the existing general laws." 16B Am. Jur. 2d 197, supra, § 701. "There can, in the nature of things, be no vested right in an existing law which precludes its change or repeal, nor any vested right in the omission to legislate on a particular subject." Id., 199, § 703; see, e.g., *Enfield Federal Savings & Loan* v. *Bissell,* 184 Conn. 569, 574, 440 A.2d 220 (1981) (no vested right to have claim adjudicated under previous version of statute governing deficiency judgments).

We conclude that Hayes' right to sue for notice defects, prior to being extinguished by Special Act 99-7, § 6 (c), was only an expectation premised on the legal status quo existing prior to the act and, therefore, not a vested right.[20] See *Manchester Environmental Coalition* v. *Stockton,* supra, 184 Conn. 71 (plaintiffs' right to sue commissioner of department of commerce for failure to comply with statutory mandates in approving project plan for industrial park not vested right). Notably, by the plain terms of Special Act 99-7, § 6 (c), if Hayes had brought its action prior to the effective date of the act or if the usual time for taking an appeal had not yet expired, the act would not have operated

[20] We note that "[t]here is no constitutional right to judicial review of the action of a planning or zoning agency. Such review exists only under statutory authority." *Schwartz* v. *Town Plan & Zoning Commission,* supra, 168 Conn. 24.

to validate the defendant's allegedly improper action. See footnote 14. In sum, we conclude that Special Act 99-7, § 6 (c), as applied to the facts of this case, is a valid exercise of legislative power. On the basis of the foregoing analysis, Hayes' second claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.