SCOTT WARNER *v.* PLANNING AND ZONING
COMMISSION OF THE TOWN
OF SALISBURY ET AL.
(AC 29297)

DiPentima, Gruendel and Lavery, Js.

Argued September 16, 2009—officially released March 23, 2010

*Lorinda S. Coon*, with whom, on the brief, was *Patrick J. Flaherty*, for the appellant (plaintiff).

*Charles R. Andres,* for the appellee (named defendant).

*David M. Cusick,* with whom, on the brief, was *Frank H. Finch, Jr.,* for the appellees (defendant Dianna Brochendorff et al.).

*Opinion*

LAVERY, J. The plaintiff, Scott Warner, appeals from the judgment of the trial court dismissing his appeal from the decision of the planning and zoning commission of the town of Salisbury (commission).[1] He claims that the court improperly dismissed the appeal because (1) he was not required to plead and to prove aggrievement with respect to a 2000 decision by the commission granting an alleged zone change to an owner of abutting property, (2) alternatively, if a showing of aggrievement was required as to the 2000 decision, he was aggrieved, (3) General Statutes § 8-8 (r) did not apply to his collateral attack because the 2000 decision was void ab initio and (4) applying § 8-8 (r) where the commission provided no notice of the 2000 decision violated his due process rights by depriving him of the opportunity to be heard in connection with a government decision that deprived him of his property. We conclude that the plaintiff's failure to comply with the time limitation of § 8-8 (r) is dispositive of the plaintiff's appeal because it bars him from challenging the commission's 2000 decision.[2] Accordingly, we affirm the judgment of the trial court.

The following undisputed facts and procedural history, as set forth in the court's memorandum of decision,[3] provide the necessary context for the plaintiff's

---

[1] In addition to the commission, Dianna Brochendorff and Kristin A. McLallen also are defendants in this appeal.

[2] It is unnecessary, therefore, to address the plaintiff's aggrievement claims.

[3] We note that trial courts have issued two memoranda of decisions regarding the plaintiff's appeal from the commission's January 7, 2005 decision. The first decision, by Judge Trombley; *Warner* v. *Planning & Zoning Com-*

appeal: "The plaintiff, an abutting owner of real property located at 175 Main Street in Salisbury, has appealed from a decision of [the commission] on January 7, 2005. [Dianna] Brochendorff purchased 175 Main Street consisting of 2.090 acres by deed dated April 15, 2000, from David Minton; the property was described therein as a single parcel. . . . Prior to that conveyance, 175 Main Street had consisted of two (2) lots, which historically had been sold as separate parcels until Minton, the owner of those two parcels since 1971 . . . sold to Brochendorff." (Citations omitted.)

In a prior related decision filed May 15, 2006, the court, *Trombley, J.*, stated: "On July 21, 2000, the [commission] . . . unanimously approved a motion [by Brochendorff] to clarify the boundary line for the CG-20 zone [of Brochendorff's property], as the boundary line of said property, which will go back 200 feet in depth into her property, then west, as shown on the survey map, which will be part of the permanent record, as per § 403 of the Salisbury zoning regulations. . . . This decision resulted in an increase in the amount of land situated in the commercial zone [as compared to the RR-1 residential zone]." (Citation omitted; internal quotation marks omitted.) *Warner* v. *Planning & Zoning Commission*, Superior Court, judicial district of Litchfield, Docket No. CV-05-4001847-S (May 15, 2006) (41 Conn. L. Rptr. 456).

In the present case, the court, *Sheedy, J.*, found that nearly five years after approving Brochendorff's motion to clarify the boundary line of the commercial zone,

*mission*, Superior Court, judicial district of Litchfield, Docket No. CV-05-4001847-S (May 15, 2006) (41 Conn. L. Rptr. 456); concerned whether it was appropriate for the court, in the context of this appeal, to examine the validity of the zone boundary adjustment action by the commission on July 21, 2000. The second decision, by Judge Sheedy, from which the plaintiff has appealed in this case, concerned whether Brochendorff could convey a portion of her property without filing an application for subdivision approval.

the commission provided notice of a special meeting on January 7, 2005, to consider whether "Brochendorff could convey a portion of her property without the filing of an application for subdivision approval and the granting of the same. All parties to this action attended that meeting.[4] On that date, the [commission] determined: (1) the two parcels previously owned by Minton were merged and became a single parcel by virtue of Minton's property description in the deed to Brochendorff . . . and (2) Brochendorff could divide her property as a 'first cut' without obtaining subdivision approval so long as each resulting parcel met the minimum requirements of the CG-20 zone district . . . . Shortly thereafter, Brochendorff sold off 1.012 acres of her property to [Kristin A. McLallen]." (Citations omitted.)

The plaintiff appealed from these decisions pursuant to § 8-8,[5] challenging not only the "first cut" determination of the commission on January 7, 2005, but also seeking to overturn the alleged change of zone the commission granted to Brochendorff in 2000 due to, according to the plaintiff, the absence of an application, the absence of notice and the absence of a hearing. The plaintiff, who at the time of the 2000 decision was a mortgagee and not the owner of the property abutting

---

[4] The plaintiff appeared at the January 7, 2005 meeting and inquired as to how the Brochendorff parcel could be divided when, in his opinion, there was not enough square footage for two legal lots in the RR-1 district.

[5] The plaintiff argues in his appellate brief that § 8-8 (r) does not apply to his appeal "because it was not 'an appeal or action . . . to set aside' the [commission's] 2000 decision [as required by the statute] but sought only a declaratory ruling that the decision was void ab initio." Because it is clear that the plaintiff made an administrative appeal, his declaratory ruling argument does not affect our determination of the issues in this appeal. See *Interlude, Inc.* v. *Skurat*, 253 Conn. 531, 536–37, 754 A.2d 153 (2000) ("[i]t necessarily follows that if a statute of limitations would have barred a claim asserted in an action for relief other than a declaratory judgment, then the same limitation period will bar the same claim asserted in a declaratory judgment action" [internal quotation marks omitted]).

that of Brochendorff, claimed that the commission illegally changed the zone boundary on a portion of Brochendorff's property from residential to commercial.[6] The plaintiff requested that the court declare the commission's 2005 action illegal, arbitrary and an abuse of discretion, and that the court also declare the commission's corresponding 2000 action null and void. *Warner* v. *Planning & Zoning Commission*, supra, 41 Conn. L. Rptr. 456.

On appeal, Judge Trombley, in determining the proper scope of the plaintiff's appeal, addressed the plaintiff's challenge of the commission's alleged zone change in 2000. In a memorandum of decision filed May 15, 2006, the court concluded that the plaintiff was barred from challenging the 2000 decision because (1) aggrievement as to that decision was not pleaded, (2) the plaintiff was neither statutorily nor classically aggrieved by that decision because the plaintiff was not the owner of the abutting property in 2000 and (3) the appeal from that decision was time barred by § 8-8 (r). Id. In light of these determinations, the court subsequently limited the scope of the appeal to the commission's "first cut" determination on January 7, 2005.

In response, the parties agreed that only the January 7, 2005 decision was relevant to the court's adjudication of the pending appeal. After concluding that the plaintiff was both statutorily and classically aggrieved by the commission's 2005 decision because of the plaintiff's then current ownership of the abutting property, Judge Sheedy found that substantial evidence supported the commission's "first cut" determination. As a result, the court affirmed the commission's decision. This appeal

[6] At the time of the commission's 2000 decision, the plaintiff held a mortgage coupled with an expectancy interest on the property that abutted Brochendorff's parcel. His mother owned the abutting property, and he was named the sole heir. The plaintiff became the owner of the abutting property upon his mother's death on March 9, 2004.

followed, limited essentially to whether the court erred in barring the plaintiff from challenging the commission's 2000 decision.[7]

I

At the outset, we must address whether this administrative appeal from the commission's 2005 decision is the proper legal vehicle to decide the validity of the 2000 zoning boundary adjustment action. After reviewing relevant authority, it is clear that our Supreme Court has concluded that general attacks on the validity of legislation need not be brought in the form of declaratory judgment actions. *Stafford Higgins Industries, Inc.* v. *Norwalk*, 245 Conn. 551, 582, 715 A.2d 46 (1998). Instead, such attacks can be brought in the form of substantive administrative appeals. Id.

We applied this rule in *Berlin Batting Cages, Inc.* v. *Planning & Zoning Commission*, 76 Conn. App. 199, 214, 821 A.2d 269 (2003). In that case, the plaintiff property owner, who was challenging the planning and zoning commission's denial of a site plan application, sought leave to amend its complaint to add grounds that the zoning regulations relied on by the commission were either not effective or had not validly been adopted in the first place. "[T]he plaintiff essentially sought for the court to consider a challenge to the regulations relied on by the commission as an avenue to obtain relief in its nondeclaratory administrative appeal." Id., 212. We concluded that the "plaintiff properly pursued its challenges to the regulations in its substantive

---

[7] The plaintiff frames the issue on appeal as follows: "If the 2000 decision [was] valid, the Brochendorff property was mostly in the commercial zone and could be divided. If the 2000 decision was not valid, the January 7, 2005 decision could not stand because there was not sufficient land for two lots in the residential zone." Consequently, the plaintiff asserts that the validity of the commission's 2005 decision was entirely dependent on the commission's allegedly illegal 2000 decision.

[administrative] appeal instead of in a separate declaratory action." Id., 214.

A case more analogous factually to the appeal before us is *Hayes Family Ltd. Partnership* v. *Planning & Zoning Commission*, 98 Conn. App. 213, 907 A.2d 1235 (2006), cert. denied, 281 Conn. 903, 904, 916 A.2d 44 (2007). In that case, the planning and zoning commission amended its regulations governing planned residential zones in 1998. In 2003, the plaintiff filed an application with the commission for a change of regulations, requesting that the commission delete a portion of the 1998 amended regulations, the applicability of which would potentially reduce the number of units the plaintiff could construct on the subject property. At the public hearing on the plaintiff's application, the plaintiff argued that the commission had not given proper public notice of the proposed amendment in 1998, nor did it file a copy of the amendment in the town clerk's office at least ten days prior to the commission's hearing on the amendment as required by statute. Additionally, the plaintiff argued the amendment substantively was unnecessary.

The commission denied the plaintiff's request and the plaintiff appealed. Before ultimately dismissing the plaintiff's appeal, the trial court noted that "although the appeal was taken from the [commission's] 2003 decision, it essentially was a challenge to the [commission's] 1998 amendment . . . of the regulations." Id., 218. After granting certification to appeal, we affirmed the judgment of the court. In so doing, we allowed the plaintiff to challenge the validity of the commission's 1998 zoning action in the context of an administrative appeal from the commission's 2003 decision.

On the basis of the foregoing authority, we conclude that, in the present case, the plaintiff's administrative appeal from the commission's 2005 decision is a proper

legal vehicle to address the alleged illegality of the commission's 2000 zoning boundary adjustment action.

## II

The plaintiff argues that as a result of the commission's "total and complete lack of compliance with the statutory notice requirements as well as its own regulations in connection with the [commission's 2000 decision], he and other interested parties were precluded from objecting to the zone change[8] as illegal, ill-considered, imprudent, not in keeping with the town's comprehensive plan and harmful. The [plaintiff asserts that the] attempted zone change was [thus] void ab initio and could not be relied upon by the commission in 2005." Consequently, according to the plaintiff, he was not required to take action within one year of the 2000 decision but could collaterally attack it as null and void when the 2000 decision came to light years later, directly affecting his interests. On the basis of our interpretation of § 8-8 (r) and its application to the facts of this case, we are not persuaded by the plaintiff's arguments.

"The interpretation of a statute, as well as its applicability to a given set of facts and circumstances, involves a question of law and our review, therefore, is plenary. . . . If the meaning or applicability of a statute is clear from its text, this court in construing it should look no further. See General Statutes § 1-2z. If, however, the applicability of a provision is not so apparent, we must undertake a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory

---

[8] Although the plaintiff describes the commission's 2000 action as a zone change, and the commission, conversely, characterizes it as a zone boundary clarification, § 8-8 (r) does not distinguish between these ostensibly differing classifications. Thus, such difference in classification of the 2000 decision does not impact our determination regarding the applicability of § 8-8 (r).

language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . .

"Section 8-8 (r) provides in relevant part that when a zoning commission fails to comply with a requirement of a general or special law . . . governing the content, giving, mailing, publishing, filing or recording of any notice either of a hearing or of an action taken by the [commission], any appeal or action by an aggrieved person to set aside the decision or action taken by the [commission] on the grounds of such noncompliance shall be taken not more than one year after the date of that decision or action." Although the language of this subsection is both clear and emphatic, it does not include any express limitations as to its applicability, nor does it reference any other provision containing such a limitation. We, therefore, turn to the legislative history of § 8-8 (r) for guidance. See *Hayes Family Ltd. Partnership* v. *Planning & Zoning Commission*, supra, 98 Conn. App. 223–24.

In applying § 8-8 (r) to the facts and circumstances of this case, we do not write on a blank slate. In *Hayes Family Ltd. Partnership*,[9] we concluded that "our examination of documents comprising the legislative

---

[9] Although we ultimately determined in *Hayes Family Ltd. Partnership*, given the year of the commission's action, that § 8-8 (r) did not operate to bar the plaintiff's claim that the defendant planning and zoning commission failed to give proper notice in 1998, nonetheless, our discussion regarding the legislative history and intent of § 8-8 (r) is instructive in the present appeal. See *Hayes Family Ltd. Partnership* v. *Planning & Zoning Commission*, supra, 98 Conn. App. 229.

history of [Public Acts 1999, No. 99-238 (P.A. 99-238), § 5 of which is codified as § 8-8 (r)] and [Public Acts 2000, No. 00-84] confirms that the legislature specifically intended the limitation period of § 8-8 (r) to apply only to challenges to failures of notice postdating January 1, 1999, as expressed in the latter act. That history indicates that, prior to the enactment of P.A. 99-238, the legislature customarily approved omnibus validating acts on a biennial basis in odd numbered years. Those provisions, passed as special acts, were intended to give legal effect to certain past acts or transactions that otherwise would be ineffective because of a failure to comply with some requirement of the law. Each validating act was intended to retroactively cure defects arising since the effective date of the last such act.

"By passage of P.A. 99-238, the legislature intended to accomplish *prospectively* and comprehensively what it previously had effected *retroactively* and piecemeal through the omnibus validating acts, i.e., in regard to actions of zoning entities, instead of curing failures of notice for the previous two years by a general validating provision, P.A. 99-238 prospectively created a new two year limit (now one year) within which to challenge actions taken without proper notice. As originally enacted, P.A. 99-238 was to take effect on July 1, 2000." (Emphasis in original.) *Hayes Family Ltd. Partnership* v. *Planning & Zoning Commission,* supra, 98 Conn. App. 227–28.

Consequently, although the one year limitation period of § 8-8 (r) applies only to notice challenges regarding a decision or action by a commission postdating January 1, 1999, it necessarily follows that we must determine the consequences of a party's failure to bring an appeal or action within the one year limitation period. The plain language of § 8-8 (r) means what it says— "any appeal or action by an aggrieved person to set aside the decision or action taken by the [commission]

on the grounds of such noncompliance *shall* be taken not more than one year after the date of that decision or action." (Emphasis added.) General Statutes § 8-8 (r). Thus, the statute prohibits an appeal from an action of the commission claimed to have been made without proper notice beyond one year from the date of the action.

The legislature's intent to bar late appeals is also revealed by subsection (b) of § 8-8 that specifically states: "Except as provided in subsections (c), (d) and (r) of this section . . . any person aggrieved by any decision of a board . . . may take an appeal to the superior court for the judicial district in which the municipality is located . . . ." General Statutes § 8-8 (b). This subsection's reference to § 8-8 (r) adds further clarity to the fact that the legislature intended § 8-8 (r) to provide a one year statute of limitations, noncompliance with which will resultantly bar appeals or actions taken outside the one year limitation period.

That conclusion is bolstered furthermore by the general statutory scheme that governs land use appeals. "There is no absolute right of appeal to the courts from a decision of a [planning and zoning commission]. . . . Appeals to the court from [commissions] exist only under statutory authority . . . . Appellate jurisdiction is derived from the . . . statutory provisions by which it is created, and can be acquired and exercised only in the manner prescribed." (Citations omitted; internal quotation marks omitted.) *Brookridge District Assn.* v. *Planning & Zoning Commission*, 259 Conn. 607, 611–12, 793 A.2d 215 (2002). Because a statutory right to appeal may be taken advantage of only by strict compliance with § 8-8, when the appeal period expires under § 8-8 (r), the trial court can no longer hear the appeal. See *Cardoza* v. *Zoning Commission*, 211 Conn. 78, 82, 557 A.2d 545 (1989).

Finally, the manifest purpose of § 8-8 (r) is to reflect a "(1) . . . policy of law, as declared by the legislature, that after a given length of time a [commission] should be sheltered from liability and furthers the public policy of allowing people, after the lapse of reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability . . . and (2) to avoid the difficulty in proof and record keeping which suits involving older claims impose." (Internal quotation marks omitted.) *Keegan* v. *Aetna Life & Casualty Ins. Co.*, 42 Conn. App. 803, 809, 682 A.2d 132, cert. denied, 239 Conn. 942, 686 A.2d 120 (1996).

On the basis of the text of the statute, its legislative history, its relationship to existing legislation as well as the legislative policy it was designed to implement, § 8-8 (r) extends to a commission's failure to comply with laws governing notice but only to the extent of providing a party an avenue to appeal or to challenge the commission's decision within one year from the date of that decision.[10] In the appeal before us, because the plaintiff is not challenging the commission's 2005 "first cut" determination but is, in essence, challenging the commission's 2000 zone boundary adjustment decision, § 8-8 (r) bars the plaintiff's claims. This one year statute of limitations applies only to challenges based on failures of notice postdating January 1, 1999. The commission's zone boundary adjustment decision was made on July 21, 2000. It follows that because the plaintiff did not appeal or file an alternative action to set

---

[10] Relying on *Hallier* v. *Zoning Board of Appeals*, Superior Court, judicial district of New Haven, Docket No. CV-05-4008492-S (January 11, 2006) (40 Conn. L. Rptr. 581), the plaintiff argues that "[w]ithout proper notice, zoning authority actions are null and void." (Internal quotation marks omitted.) The cases cited in *Hallier*, however, all involved causes of action that occurred prior to the passage of § 8-8 (r). Furthermore, "[t]rial court cases . . . do not establish binding precedent." *Statewide Grievance Committee* v. *Presnick*, 18 Conn. App. 316, 323 n.3, 559 A.2d 220 (1989).

aside this zone boundary adjustment until 2005, § 8-8 (r) bars the plaintiff from doing so approximately five years later.

### III

The plaintiff's final argument is that the application of § 8-8 (r) violated his due process rights because the commission provided no notice and no opportunity to be heard in connection with the 2000 decision and, as a result, the decision deprived him of his property. Specifically, the plaintiff argues that it "is not simply the deprivation of notice of the zone change [but additionally] it is the deprivation of his property by a decision affecting it adversely without notice and an opportunity to be heard in connection with the substantive criteria [of the comprehensive plan and police power enumerated in the ordinance that] the commission should have applied." According to the plaintiff, "Connecticut appellate courts refuse to enforce time limits in a manner that would violate a person's right to procedural due process," and, therefore, the court construed § 8-8 (r) in a manner that violated his due process protections. We disagree.

For the plaintiff to prevail on his due process claim, he must prove that (1) the property interest he asserts is cognizable under the due process clause, (2) he has been deprived of that property interest and (3) the deprivation of the property interest has occurred without due process of law. *Double I Ltd. Partnership* v. *Plan & Zoning Commission*, 218 Conn. 65, 76, 588 A.2d 624 (1991). "A constitutionally cognizable property interest is [thus] a prerequisite to the attachment of constitutional procedural and substantive due process rights." *Grimes* v. *Conservation Commission*, 243 Conn. 266, 271–72, 703 A.2d 101 (1997). "[A] statute or ordinance providing procedural guarantees does not create a constitutionally protected property interest unless it sets forth substantive criteria that limit the discretion of

the decision-making body." (Internal quotation marks omitted.) Id., 272. "Due regard must be had to the nature of the proceeding and the individual right affected by it." (Internal quotation marks omitted.) *Protect Hamden/ North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* 220 Conn. 527, 554–55, 600 A.2d 757 (1991).

The plaintiff's property interest in this case is not cognizable under the due process clause. The plaintiff's asserted interest in notice of the commission's 2000 decision regards a procedural guarantee that does not create a constitutionally protected property interest. Moreover, at the time of the commission's 2000 decision, the plaintiff did not own the property abutting Brochendorff's parcel. Rather, the plaintiff was a mortgagee of the abutting property and a holder of an expectancy interest. Thus, despite the plaintiff's attempt to graft substantive criteria regarding a comprehensive plan and the police power onto a procedural guarantee, the plaintiff has failed to establish that he was entitled to any procedural guarantees given his status as a mere mortgagee of the abutting property. We conclude that the property interest the plaintiff asserts is not cognizable under the due process clause, and, therefore, this claim fails.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

[11] The plaintiff also claims for the first time in his reply brief that, alternatively, "[e]ven if, as [the] defendants contend, there is no constitutional due process issue implicated, the plaintiff has a right to fundamental fairness under the concept of natural justice that is entitled to protection." Our Supreme Court has held that the common-law right to fundamental fairness in administrative proceedings is not coextensive with constitutional due process. See *Grimes* v. *Conservation Commission,* supra, 243 Conn. 273 n.11. Therefore, because the fundamental fairness claim was not raised in the plaintiff's initial brief, we will not address it. See *State* v. *Hill,* 237 Conn. 81, 97 n.23, 675 A.2d 866 (1996) ("[i]t is a well established principle that arguments cannot be raised for the first time in a reply brief" [internal quotation marks omitted]).